**Stanley JAFFEE and Sharon Blinn Jaffee, Individually and Stanley Jaffee, on behalf of all others similarly situated, Appellants,**

**v.**

**UNITED STATES of America, and Certain Past and Present Officers and Officials of the United States Department of Defense, the Department of the Army and the Atomic Energy Commission and the United States Army whose names will be inserted when ascertained, each individually and in his official capacity.**

No. 78-2041.

United States Court of Appeals,
Third Circuit.

Argued Nov. 14, 1978.
Decided Feb. 9, 1979.

---

Kreindler & Kreindler, New York City, Lanigan, O'Connell & Hirsh, Basking Ridge, N. J., for appellants; Stanley J. Levy, Melvin I. Friedman, Steven J. Phillips, New York City, of counsel.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Robert L. Del Tufo, U. S. Atty., Newark, N. J., David J. Anderson, Rebecca L. Ross, Elizabeth Gere Whitaker, Attys., Civ. Div., Dept. of Justice, Washington, D. C., for appellee.

Before ROSENN, GARTH, and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal presents a perplexing problem spawned by modern nuclear warfare which requires us to examine again the doctrine of sovereign immunity of the United States. The genesis of the litigation is the serious injury allegedly incurred by the male plaintiff from atomic radiation while on active duty in the military service.

In 1953, when Stanley Jaffee ("Jaffee") was serving in the United States Army, the Government tested a nuclear device at Camp Desert Rock, Nevada. Jaffee avers that he and other soldiers were ordered to stand in an open field near the site of an explosion of a nuclear bomb without benefit of any protection against radiation; that the explosion caused Jaffee and other soldiers similarly situated to be exposed to massive doses of highly dangerous radiation; that the Government, knowing of the grave risks of injury from such exposure, nonetheless, deliberately compelled Jaffee and other soldiers similarly assigned to participate in the nuclear testing and in the radiation exposure without their knowledge or consent. Jaffee further alleges that because of his exposure to such radiation, he has developed inoperable cancer.

Asserting that the Government deliberately violated rights guaranteed by the first, fourth, fifth, eighth, and ninth amendments, Jaffee and his wife filed a complaint consisting of four counts in the United States District Court for the District of New Jersey. In Counts I, II, and III, the Jaffees joined the United States and unnamed individuals as defendants and made claims for money damages. Count IV was a class action, in which Stanley Jaffee sought to represent all of the soldiers who were ordered to be present at the explosion.

In this count, naming only the United States as a defendant, Jaffee prayed that the United States be directed to warn all members of the class about the medical risks facing them and that the United States be required to provide or subsidize medical care for the members of the class.

The district court dismissed Count IV, concluding that the doctrine of sovereign immunity barred that action against the United States. Under Rule 54(b), Fed.R. Civ.P., the court certified the dismissal for appeal, but retained jurisdiction over Counts I, II, and III. The United States moved this court to dismiss the appeal for lack of jurisdiction or to affirm summarily the order of the district court. Although we have denied the motion for summary affirmance,[1] the motion to dismiss for lack of appellate jurisdiction is still pending before us, as is Jaffee's appeal from the district court's dismissal of Count IV.

### I.

Two possible grounds for jurisdiction have been proposed in this case. First, if the district court properly certified its order under Rule 54(b), Fed.R.Civ.P., we have jurisdiction over a final judgment. 28 U.S.C. § 1291 (1976). Second, if the district court entered an interlocutory order denying an injunction, there is appellate jurisdiction under 28 U.S.C. § 1292(a)(1) (1976). We begin with section 1292(a)(1).

Under 28 U.S.C. § 1292(a)(1), federal appellate courts have jurisdiction over appeals from "[i]nterlocutory orders of the district courts of the United States . . . refusing . . . injunctions . . . ." In Count IV of his complaint, Jaffee moved for an injunction ordering the Government to warn members of the class and to provide medical care for them.[2] The Govern-

---

1. On September 15, 1978, Chief Judge Seitz, acting for the court in banc, entered an order denying the motion for summary affirmance and referring the motion to dismiss the appeal to the merits panel.

2. Although Jaffee petitioned for a permanent injunction, this court has held that even granting a permanent injunction is "interlocutory" if

other claims are pending before the district court, so that the injunction is not "dispositive of the entire controversy between the parties." *Hook v. Hook & Ackerman, Inc.,* 213 F.2d 122, 128–29 (3d Cir. 1954). *Hook* concerned the grant of a permanent injunction rather than a denial, but the order denying an injunction in this case comes within the rationale of the case. Because other claims are pending before

ment contends that this prayer for injunctive relief is a disguised claim for damages.

■ We agree with the Government that the request for prompt medical examinations and all medical care and necessary treatment, in fact, is a claim for money damages. A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money. *See International Engineering Co. Div. of A–T–O, Inc. v. Richardson,* 167 U.S.App.D.C. 396, 512 F.2d 573 (1975), *cert. denied,* 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636 (1976); *Warner v. Cox,* 487 F.2d 1301, 1304 (5th Cir. 1974). Jaffee requests a traditional form of damages in tort—compensation for medical expenses to be incurred in the future. *See, e. g., Coll v. Sherry,* 29 N.J. 166, 148 A.2d 481, 485 (1959); 25 C.J.S. Damages § 91(3) (1966). Indeed, his complaint seeks an injunction ordering either the provision of medical services by the Government or payment for the medical services. The payment of money would fully satisfy Jaffee's "equitable" claim for medical care.

■ We reach a different result, however, in regard to the petition that the Government warn members of the class about medical risks. The payment of money cannot satisfy this claim. Although providing the warning will impose an expense on the Government, the creation of expense does not necessarily remove a form of relief from the category of equitable remedies. *See, e. g., White v. Mathews,* 559 F.2d 852, 855–56, 859–60 (2d Cir. 1977) (writ of mandamus proper remedy by which court orders expedited action by Social Security Administration). *Cf. Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974) (eleventh amendment bars nominally "equitable" action that "requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation"). The dis-

missal of the claim for warning is appealable under 28 U.S.C. § 1292(a)(1).

Because that part of the district court's interlocutory order dealing with warning to the class was the denial of an injunction, we have jurisdiction over the whole order, including dismissal of the related claim for medical care. *Kohn v. American Metal Climax, Inc.,* 458 F.2d 255, 262 (3d Cir.), *cert. denied,* 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972). We therefore need not reach the propriety of the district court's certification under Rule 54(b).

**II.**

The district court ruled that the doctrine of sovereign immunity bars relief under Count IV. We affirm in part and reverse in part.

Jaffee proposes several theories under any one of which he contends his suit against the United States is not foreclosed by the doctrine of sovereign immunity. First, he vigorously argues that courts have the power to abolish the doctrine or create exceptions to it. Second, even if such action is beyond judicial competence he contends that by enacting and later amending the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.,* Congress has waived sovereign immunity as a defense to his suit.

Jaffee strenuously urges that sovereign immunity is no more than a common law doctrine created by the courts, and as such courts have the power to abolish or modify it. He further asserts that in spite of its longevity, the doctrine is illogical, unjust, outdated, and that it should be stricken in its entirety when it impedes the vindication of what he characterizes as fundamental constitutional rights.

As the plaintiffs observe, the doctrine indeed has a long historical basis which, although not always regarded with respect, has been traditionally observed in this coun-

the district court, the denial of the injunction does not dispose of the entire controversy between the parties. If the denial did end the

controversy, we might have jurisdiction under 28 U.S.C. § 1291 (1976).

try, especially as to suits founded in tort.[3] Some have attributed the doctrine in this country to a vestigial anachronism of the English monarchy when the king could do no wrong. One scholar attributes the prime cause for the early adoption of the doctrine by our new republic to "the powerful resistance of the states to being sued on their debts."[4] Although he offered neither authority nor any reasoned analysis, Chief Justice Marshall concluded in *Cohens v. Virginia,* 6 Wheat. 264, 411–12, 5 L.Ed. 257 (1821), that "[t]he universally accepted opinion is, that no suit can be commenced or prosecuted against the United States; that the judiciary act does not authorize such suits." About a quarter of a century later, the Supreme Court had before it a matter in which the United States itself was party defendant. The court held that the suit should be dismissed, reiterating the principle enunciated in *Cohens v. Virginia.*[5]

With the expansion of governmental activities and the multiplication of remediless wrongs caused by its agents, Congress saw fit and just to enact legislation permitting suits against the sovereign on deserving claims growing out of contract, tax collections, and tort. The Federal Tort Claims Act of 1946, 28 U.S.C. §§ 1346, 2671–2680 (1976), is the general tort claims statute providing compensation by the United States for deserving claimants. It is the culmination of a determined effort to mitigate the unreasonable consequences of sovereign immunity from suit and to relieve Congress from a plague of private bills seeking relief for tortious injuries. The Act confers district court jurisdiction generally over claims for money damages against the United States predicated on negligence. Although the Act has broad coverage, it does contain a number of exceptions. The Supreme Court has carefully considered the specific question of whether that legislation permitted suits against the United States for injuries to a soldier caused by the negligence of his superior officers or the Government. It held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950).[6]

This is not to say that the Government regards lightly its obligation to those who serve in its armed forces. Congress has enacted a rather comprehensive system of benefits for military personnel and definite and uniform compensation for injuries or death of those in armed services, in addition to medical and hospital treatment. Included are the Military Personnel and Civilian Employees' Claims Act and legislation providing veterans' benefits.[7]

---

3. In England where, after centuries of litigation, English subjects had developed, even prior to the American revolution, certain rights to relief against government illegality, they were unable to assert liability against the Crown for the torts of its servants. "The one serious deficiency was the nonliability of government for torts of its servants." L. L. Jaffee, *Suits Against Governments and Officers: Sovereign Immunity* ("Sovereign Immunity"), 77 Harv.L. Rev. 1, 19 (1963).

4. *See* L. L. Jaffee, Sovereign Immunity, *supra* 19.

5. Again without analysis the Court applied the doctrine, merely stating:
   No maxim is thought to be better established, or even more universally assented to, than that which ordains that a sovereign . . . cannot *ex delicto* be amenable to its own creatures or agents employed under its own authority for the fulfillment merely of its own legitimate ends. A departure from this maxim can be sustained only on the ground of permission on the part of the sovereign or the government expressly declared . . . . *Hill v. United States,* 9 How. 386, 389, 50 U.S. 386, 389, 13 L.Ed. 185 (1850).

6. The Jaffees have not brought any action under the Federal Tort Claims Act. Although the coverage of that Act was extended in 1974, even the expanded law would not aid the Jaffees. The Act now permits suits arising from assault or battery, but only "with regard to acts or omissions of investigative or law enforcement officers of the United States Government . . . ." 28 U.S.C. § 2680(h) (1976).

7. Military Personnel and Civilian Employees' Claims Act, 10 U.S.C. §§ 2733, 2735, 2736 (1976), basically permits that claims against the United States for loss of property, personal

Although the current climate of academic and judicial thought finds governmental immunity from suit in disfavor, a plausible explanation appears for its continued application to members of the armed forces injured while in the course of active duty, regardless of whether that injury is caused by the negligence of a superior officer or by a direct command. If claims for injuries sustained by members of the armed forces in the execution of military orders were subjected to the scrutiny of courts of justice, then the civil courts would be required to examine and pass upon the propriety of military decisions. The security and common defense of the country would quickly disintegrate under such meddling. "[A]ctions and essential military discipline would be impaired by subjecting the command to the public criticism and rebuke of any member of the armed forces who chose to bring a suit against the United States." *Jefferson v. United States,* 178 F.2d 519, 520 (4th Cir. 1949), *aff'd sub nom. Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Even if we were inclined to reconsider the doctrine in connection with an injury sustained as a result of a deliberate military command, we are foreclosed from so doing by the Supreme Court's recent reiteration of the doctrine, although in a different context in *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).[8]

Alternatively, Jaffee urges that this court can create an exception to the doctrine in order to grant relief for deliberate violation of constitutional rights. For authority supporting this argument, he turns to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and to *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). In *Bivens* the Court recognized an implied cause of action for damages against federal officers who had violated the fourth amendment. *Butz* held that certain federal executive officials did not enjoy an absolute immunity for the damage suits permitted by *Bivens.*[9] From these cases Jaffee tries to extract the principle that "the applicable common law doctrine of governmental immunity must yield to the paramount necessity of vindicating constitutional guarantees." But the suits in *Bivens* and *Butz* were against individual federal officers and not against the United States. Because Jaffee has sued the Government itself, *Bivens* and *Butz* do not afford him a traversable bridge across the moat of sovereign immunity.[10]

Jaffee would have us make an exception to sovereign immunity because he alleges deliberate violation of his constitu-

injury, or death may be settled and paid if the loss or injury was caused by an employee or member of the armed services or was otherwise incident to noncombat activities of the military, but these sections do not grant compensation for personal injury or death of an employee or member of the armed services if the injury or death is incident to his service.

31 U.S.C. §§ 241–43 (1976) permit claims against the United States for damage to the personal property of members of the uniformed services to be settled and paid if the damage was incident to service.

Veterans' Benefits legislation may be found at:

38 U.S.C. §§ 301–62 (1976)—compensation for service-connected liability or death

38 U.S.C. §§ 401–23 (1976)—dependency and indemnity compensation for service-connected deaths

38 U.S.C. §§ 501–62 (1976)—pensions for non-service-connected disability or death or for service

38 U.S.C. §§ 601–54 (1976)—hospital, domiciliary, and medical care

38 U.S.C. §§ 701–88 (1976)—life insurance

8. Even Jaffee's brief concedes that abolition of sovereign immunity is "perhaps beyond the power of this Court."

9. Other executive officials, exercising adjudicative or prosecutorial functions, were held to be absolutely immune. 438 U.S. at 486, 98 S.Ct. 2894.

10. Jaffee also argues that the principle of sovereign immunity does not preclude a court from fashioning equitable remedies. But unless sovereign immunity has been waived, it bars equitable as well as legal remedies against the United States. *Malone v. Bowdoin,* 369 U.S. 643, 648, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962) (specific performance barred when sought in "an action which is in sum and substance one against the United States without its consent").

tional rights. The repeated statements of the Supreme Court from its inception, however, are plain and unequivocal: the United States is subject to suit only by its consent. As the Court wrote in *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941), "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of consent to be sued in any court define that court's jurisdiction to entertain the suit." (Citations omitted.) As previously indicated, the Court confirmed this principle in *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976): ". . . except as Congress has consented to a cause of action against the United States, 'there is no jurisdiction . . . to entertain suits against the United States.'" (*Quoting United States v. Sherwood,* 312 U.S. 584, 587–88, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).) Jaffee correctly points out that neither *Sherwood* nor *Testan* concerned a deliberate constitutional violation. The Court's statements, however, are clear; they leave no basis for the judiciary to carve out the exception which Jaffee seeks. We believe that power lies only with the Congress.

### III.

Because of sovereign immunity, Jaffee can sue the United States only if Congress has waived the immunity by statute. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Jaffee contends that in amending the APA at 5 U.S.C. § 702 (1976), the Government has waived immunity to this suit.

After amendment in 1976, 5 U.S.C. § 702 now reads, in part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or *failed to act* in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party . . . Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground . . . . (Emphasis supplied.)

Congress intended that this provision, under some circumstances, would waive sovereign immunity. *See* H.R.Rep.No.94–1656, 94th Cong., 2d Sess. 1, *reprinted in* [1976] U.S. Code Cong. & Admin.News, pp. 6121, 6121.

■ It may be disputed, however, what those circumstances are. In a recent decision, the Second Circuit has ruled that the amendments to section 702 "did not remove the defense of sovereign immunity in actions under [28 U.S.C.] § 1331." *Watson v. Blumenthal,* 586 F.2d 925, 932 (2d Cir. 1978). Jaffee seeks review under section 1331.[11] We are constrained to disagree with the Second Circuit and to hold that section 702, when it applies, waives sovereign immunity in "nonstatutory" review of agency action under section 1331. As the House Report shows, Congress amended section 702 with a specific purpose of waiving sovereign immunity in equitable actions brought under section 1331. The Report notes that acts of the older executive departments, such as the Department of Defense, are subject to judicial review only through "nonstatutory" suits under section 1331.[12] H.R.Rep.No.94–1656, 94th Cong., 2d Sess. 5, *reprinted in*

11. Jaffee alternatively asserted jurisdiction under 28 U.S.C. § 1346(a)(2) (1976). On appeal he evidently has abandoned this jurisdictional theory.

12. These suits are called "nonstatutory" because they are not brought under the statutes that specially provide for review of agency action. *See* H.R.Rep.No.94–1656, 94th Cong., 2d

Sess. 5, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 6121, 6125. "In these instances, judicial review is available, if at all, through actions involving matters which arise 'under the Constitution, Laws, or treaties of the United States' as provided in section 1331(a) of title 28." *Id.*

[1976] U.S.Code Cong. & Admin.News, pp. 6121, 6125. Having reviewed the injustices of sovereign immunity in these nonstatutory actions, the Report concludes "that the partial elimination of sovereign immunity, as a barrier to *nonstatutory* review of Federal administrative action" would not unduly interfere with federal agencies. *Id.,* H.R.Rep. at 9, U.S.Code Cong. & Admin. News at p. 6129 (emphasis supplied). By waiving sovereign immunity in suits for "relief other than money damages," the Congress sought to "facilitate nonstatutory judicial review of Federal administrative action . . . ." *Id.* H.R.Rep. at 19, U.S. Code Cong. & Admin.News at p. 6140. It was therefore precisely for equitable actions under section 1331 that Congress enacted the amendments to section 702.[13]

As we concluded in our discussion of appellate jurisdiction, the claim for medical care is an action for money damages. Such an action does not come within the waiver of 5 U.S.C. § 702, which covers only suits "seeking relief other than money damages." The claim for medical attention is thus barred by sovereign immunity. The claim for warning, on the other hand, is equitable and is not foreclosed by the limitation of 5 U.S.C. § 702 to non-monetary relief.

It might be argued that if a part of Count IV is equitable, the whole count is an action seeking at least some "relief other than money damages." But this reading of the statute would imply a waiver of sovereign immunity in damage suits whenever a plaintiff could append equitable relief to his monetary claims. That result would conflict with the Congressional intent revealed by the House Report on the amendment of 5 U.S.C. § 702: "The partial elimination of sovereign immunity will facilitate nonstatutory judicial review . . . without exposing the Government to new liability for money damages . . . ." H.R.Rep.No. 94–1656, 94th Cong., 2d Sess. 19–20, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 6121, 6140. The claim for medical care cannot be merged with the waiver in 5 U.S.C. § 702.

The statutory waiver of 5 U.S.C. § 702 covers "agency action." There are two "agency actions" that Jaffee asks this court to review: first, the alleged order of his commanding officer that Jaffee be present at the atomic explosion; second, the Government's failure, in the years since the explosion, to give medical warning and to provide or subsidize medical care.[14] We are not asked to set aside the order for Jaffee to be present near the blast, nor are we asked for declaratory relief.[15] As we have already indicated, sovereign immunity precludes the claim for medical care. The only requested relief remaining for our consideration is warning to the class. Therefore, only the second of these "agency actions" is properly before us.[16]

For purposes of this claim, the United States Army is an "agency" within the meaning of the APA. Under 5 U.S.C. § 701(b)(1) (1976), "agency" includes "each authority of the Government whether or not it is within or subject to review by another agency . . . ." After setting forth this broad definition, the statute creates several specific exceptions, one of which is for "military authority exercised in the field in time of war or in occupied territory." 5 U.S.C. § 701(b)(1)(G) (1976).

---

**13.** Because the Second Circuit held alternatively, in *Watson* that the Tucker Act precluded jurisdiction under section 1331, its observations on 5 U.S.C. § 702 were not essential to its decision.

**14.** At oral argument, counsel for Jaffee spoke of a "hybrid" composed of the initial order to Jaffee and the Government's subsequent failures to act.

**15.** We express no view whether a petition for declaratory relief would be moot.

**16.** We need not decide whether military orders given to soldiers by superior officers are committed to agency discretion or otherwise beyond judicial review. *See* 5 U.S.C. § 701(a)(2) (1976).

Furthermore, the doctrine of administrative exhaustion has no application to this case. The question of whether Jaffee must present his claim to the appropriate agency is relevant only to determine whether there has been an agency "failure to act" which constitutes "agency action" reviewable under the APA.

This exception, however, does not apply in this case. Even if the atomic explosion took place before July 27, 1953, the end of the Korean War, and even if the phrase "in the field in time of war" could be interpreted to cover operations in Nevada, Jaffee's claims concern the Army's failure to act in the years since the explosion and not the order to witness the detonation. This failure to act by the Army was neither in the field nor in time of war. Because the broad definition of "agency" covers "each authority of the Government" and the specific military exception is not applicable, we conclude that the Army acted as an "agency" of the Government for the purposes of this case.

■ When he instituted this suit, Jaffee had not yet requested any agency to warn members of the class about the insidious dangers of exposure to radiation. Even in the absence of any such request or notice to the agency, we do not believe that judicial review is barred under the circumstances of this case. Under the extraordinary facts of this case, in which it is alleged that many soldiers have been exposed to nuclear radiation, each day of delay can reasonably be assumed to bring irreversible and perhaps fatal consequences to them. To postpone judicial review until Jaffee now formally notifies the Army would serve little purpose. We can take judicial notice that the dangers of radiation from nuclear detonation are a matter of public knowledge. Thus, the Army and other relevant agencies have been aware for some time that those servicemen who were obliged to witness the 1953 nuclear detonation were likely to suffer physically from the exposure. Furthermore, even though the Army and other agencies may not have been aware of the hazards of radiation, certainly they have had such knowledge since these proceedings have been initiated, and they also know of the warning relief Jaffee requests. The Army and other defendants, however, have failed to act.

Accordingly, we will reverse the district court's dismissal of Jaffee's claim seeking warning. Insofar as the district court dis-missed the claim for medical care, the order of that court will be affirmed. Insofar as the district court dismissed the claim for warning, the order will be reversed and the case remanded for proceedings not inconsistent with this opinion. Costs taxed in favor of appellants.