William McKNIGHT

v.

B. CIVILETTI, Attorney General of the United States

Norman A. Carlson, Director of the Federal Bureau of Prisons for the United States.

Civ. A. No. 80–4483.

United States District Court, E.D. Pennsylvania.

Dec. 29, 1982.

William McKnight, pro se.

Dawn M. MacPhee, Asst. U.S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM

LUONGO, Chief Judge.

Plaintiff, William McKnight, a federal prisoner, filed this *pro se* action alleging a direct cause of action under the Fourth, Fifth, Sixth and Eighth Amendments to the Constitution. Defendants, sued individually and in their official capacity, are Benjamin Civiletti, former Attorney General of the United States, and Norman Carlson, Director of the Federal Bureau of Prisons. Defendants move to dismiss under Fed.R. Civ.P. 12(b) on the grounds that: (1) service of process was improper; (2) personal jurisdiction over defendants in their individual capacities is lacking; (3) plaintiff has failed to state a claim upon which relief can be granted; and (4) the action should be dismissed as frivolous under 28 U.S.C. § 1915(d). For reasons hereafter stated, defendants' motion to dismiss will be granted.

On March 28, 1977, after pleading guilty to charges of violating the federal narcotics laws, McKnight was sentenced by another judge of this court to a 30-year term of imprisonment. McKnight's present claim is that the sentence was imposed in violation

of his constitutional rights because (1) the federal authorities did not then have lawful jurisdiction over him, and (2) the sentence was imposed on charges brought against him as part of an unlawful selective prosecution.

The factual basis for McKnight's claim is as follows. On July 25, 1974, following a search of his home by members of the Philadelphia Police Department, McKnight was arrested and charged with receiving stolen goods and violating state narcotics laws. Pursuant to a plea agreement between himself and the Commonwealth, the drug charges were dropped and McKnight pled guilty to the charge of receiving stolen goods. On September 24, 1974, McKnight was sentenced to a 3-year term of probation.

On December 13, 1974, McKnight's home was again searched by members of the Philadelphia Police Department. The officers discovered narcotics and also seized personal property which McKnight alleges belonged to him. McKnight and his wife were then indicted by state authorities on drug charges. On December 18, 1974, Mrs. McKnight entered a plea of guilty and was sentenced to a one-year term of probation. The indictment against McKnight was dismissed on March 15, 1977, on the ground that his right to a speedy trial had been violated.

Federal agents did not participate in either the July or December 1974 searches of McKnight's home. However, based on the narcotics discovered during those searches, McKnight was indicted by the United States on or about March 7, 1975 for violating federal narcotics laws. McKnight entered a plea of guilty and, as was mentioned earlier, was sentenced to imprisonment for a term of 30 years.

McKnight first claims that the federal government never had jurisdiction to pass judgment over him on the narcotics charges because he was already under the jurisdiction of the Commonwealth of Pennsylvania for the same underlying offense and, indeed, was serving a 3-year term of probation for that offense. In addition, he argues that the federal indictment, to the extent that it was based upon the drugs discovered during the July 1974 search, constituted an unlawful interference into the sovereignty of the Commonwealth, since state authorities had previously agreed to dismiss their drug charges based on the fruits of the July search in return for McKnight's plea of guilty to the charge of receiving stolen goods. In other words, McKnight contends that the federal government wrongfully refused to honor the plea agreement between the Commonwealth and himself.

Second, McKnight claims that he was subjected to discriminatory or selective prosecution because the federal government chose to prosecute him but not his wife. Finally, he alleges that no return has been made of the personal property taken from him during the July and December 1974 searches of his home by state authorities.

In sum, McKnight alleges that he has been deprived of his constitutional rights to liberty and property without due process of law, and denied the equal protection of the laws.[1] He seeks a declaration that his rights have been violated, injunctive relief, $1,000,000 in compensatory damages, and $4,000,000 in punitive damages.

■ McKnight's claims against defendants in their official capacities must be dismissed for lack of subject matter jurisdiction. It is well settled that an action seeking specific relief from a party in his official capacity is, in essence, a suit against the sovereign of which the officer is an agent. *Familias Unidas v. Briscoe,* 619 F.2d 391, 403 (5th Cir.1980). *Estate of Watson v. Blumenthal,* 586 F.2d 925, 929 (2d Cir.1978). Absent a waiver of that immunity, the ac-

---

1. The complaint also contains a bare allegation that plaintiff has been subjected to cruel and unusual punishment in violation of his rights under the eighth amendment. The factual basis for this claim is not set forth, but under the most liberal reading of McKnight's complaint, he has not stated a claim against these defendants for violation of his rights under the eighth amendment. Accordingly, his eighth amendment claim will be dismissed.

tion is not maintainable. *See Jaffee v. United States,* 592 F.2d 712, 718 (3d Cir.), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979). The doctrine of sovereign immunity should not be unfamiliar to McKnight. In another of his civil rights suits against these same defendants, I held that his claims against Carlson and Civiletti in their official capacities were barred by sovereign immunity. Although the claims asserted in the earlier action are different from those alleged in the instant case, my reason for dismissing the former claims applies equally here.

Here, I am persuaded that McKnight's suit is in effect one against the United States. McKnight seeks a declaration that the defendants' conduct was unconstitutional; injunctive relief prohibiting future violations of his rights; and damages. The defendants personally had no involvement with the incidents of which McKnight complains, and it is clear that if the present defendants left office, McKnight would have to continue his suit against their successors, and that he would look to the United States to satisfy any judgment entered. In short, the defendants are named in their capacity as representatives of the United States, *Monell* [*v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)], and therefore the doctrine of sovereign immunity is at issue.

. . . . Nor is the barrier to McKnight's suit posed by sovereign immunity lessened by the fact that in part he seeks prospective equitable relief. Although, for purposes of Eleventh Amendment immunity in suits against the states, a claimant is not barred to the extent that he seeks equitable relief as opposed to damages, *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), in a suit against the United States, under the common law doctrine of sovereign immunity, "unless sovereign immunity has been waived, it bars equitable as well as legal remedies against the United States." *Jaffee, supra,* 592 F.2d at 717 n. 10.

McKnight has not cited any statutory provisions in which the United States has waived its immunity against suits such as the instant one. McKnight may, as the government contends, only be able to overcome the obstacle of sovereign immunity by bringing suit under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* Assuming, however, that McKnight's allegations do state a claim under the Tort Claims Act, I lack jurisdiction over them, for McKnight has failed to satisfy the jurisdictional prerequisite that he seek administrative adjustment of his claim before filing suit. 28 U.S.C. § 2672; *Commonwealth of Pennsylvania by Sheppard v. National Association of Flood Insurers,* 520 F.2d 11 (3d Cir.1975).

*McKnight v. Civiletti,* 497 F.Supp. 657, 660–61 (E.D.Pa.1980) (footnote omitted).

■ The bar of sovereign immunity does not apply to McKnight's claims against defendants in their individual capacities. The United States Supreme Court has recognized a *Bivens* type action for damages against federal officers for violations of a person's fifth amendment right to due process. *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). Nevertheless, McKnight has not stated a claim for damages against these defendants. There is nothing in the complaint to indicate that defendant Carlson had any actual involvement in the indictment, prosecution or sentencing of McKnight for violation of federal law. At all times pertinent to this lawsuit, Carlson has been Director of the Bureau of Prisons and charged by law with the management and regulation of the federal prison system. *See* 18 U.S.C. § 4042. There is no reason to believe, and nothing in the complaint to suggest that Carlson had any part in McKnight's conviction. The same is true for defendant Civiletti. The complaint merely alleges that Civiletti, as Attorney General, is vested by 18 U.S.C. § 4001 with control over federal penal institutions. No mention is made that Civiletti had any part in McKnight's indictment and prosecution. Liability for damages in a *Bivens* type action may not be predicated on *respondeat superior. Tarpley v. Greene,* 684 F.2d 1,

9–12 (D.C.Cir.1982); *Ellis v. Blum,* 643 F.2d 68, 85 (2d Cir.1981).[2] Furthermore, even assuming that Civiletti was involved in the prosecution of McKnight, he is absolutely immune from liability for damages. *United States ex rel. Moore v. Koelzer,* 457 F.2d 892 (3d Cir.1972); *see Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Finally defendants cannot be held liable for damages merely by assuming control over McKnight pursuant to a valid commitment order. *See Ransom v. City of Philadelphia,* 311 F.Supp. 973 (E.D.Pa.1970); *Mann v. Snyder,* 300 F.Supp. 1309 (E.D.Pa. 1969).[3]

McKnight's claims against defendants for declaratory and injunctive relief must also be dismissed. Once the claim for damages is removed, it is obvious that McKnight did not institute this suit to obtain a vindication of his civil rights, but rather to obtain his release from confinement. Indeed, McKnight makes no pretense of that fact:

> Plaintiff had attempted to litigate this matter of his Unconstitutional Imprisonment by way of Habeas Corpus, the Goverment Opposed his applcation and plaintiff failed to obtain his liberty and continued to serve years more of such illegal and unlawful conviction and sentance. Plaintiff has requested that the Federal Goverment, United States Attorney General and Federal Bureau of Prisons Institute proceedings to have plaintiff released from prison because of such illegal and unlawful imprisonment, and hs received nothing but a run around from the justice department as a whole. Plaintiff

now again with the supporting affidavit attached hereto requests that the Goverment Should Correct it's own Misstakes and Start Proceedings to secure plaintiff's release from his illegal, unlawful and unconstitutional imprisonment, to do other wise the Goverment and it's Agents, Officials and Employees Should Not Expect that they should not be SUED, Surely plaintiff is entitled to Damages or his Release for or from his confinement under the circumstances.

Plaintiff's Memorandum in Opposition to Motion to Dismiss, Document No. 4 at 3 (misspellings in original). If McKnight wishes to challenge the validity of his conviction, his remedy is to move the sentencing judge under 28 U.S.C. § 2255 to vacate or set aside his sentence. If still dissatisfied with the result from that proceeding, his remedy is before the court of appeals.

Accordingly, for reasons discussed above, defendants' motion to dismiss will be granted.

---

2. Similar reasoning compels the dismissal of whatever constitutional claim, if any, plaintiff may have for the taking of his property. There is nothing in the complaint to indicate that defendants had any involvement in the seizure of that property. On the contrary, plaintiff admits in the complaint that federal authorities were not involved in the seizure. Furthermore, the complaint contains no allegation that these defendants or, for that matter, any federal official ever had custody of the property. Hence, they cannot be charged with refusing to return that which was never in their possession. Accordingly, McKnight's claims based upon the taking of his property will be dismissed.

3. Defendants also argue that dismissal is warranted of the damage claims asserted against them in their individual capacities because service was made upon them by certified mail. While such service may be sufficient to secure personal jurisdiction over claims against public officials in their official capacities, Fed.R.Civ.P. 4(d)(5), defendants contend that it is not sufficient where money damages are sought from public officials in their individual capacities. Although there appears to be merit to defendants position, *see Micklus v. Carlson,* 632 F.2d 227, 240 (3d Cir.1980), I am disinclined to decide this motion on the basis of defendant's technical defense, especially where the claims against defendants in their official capacities have been pending for over two years.