725 F.2d 398
 84-1 USTC P 9159
 The ECCLESIASTICAL ORDER OF THE ISM OF AM, INC., Rev. George
Nicholas Baustert, and Janette C. Schwedt,
Plaintiffs-Appellants,
v.
INTERNAL REVENUE SERVICE, John Doe and Mary Roe, Jointly and
Severally, Defendants-Appellees.
 No. 82-1401.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 13, 1983.
Decided Jan. 18, 1984.
 
 1
 Joseph Falcone (argued), Lieberman & Falcone, P.C., Southfield, Mich., for plaintiffs-appellants.
 
 
 2
 Leonard R. Gilman, U.S. Atty., Detroit, Mich., Joseph H. Groff, III, Glenn L. Archer, Jr., Michael L. Paup, Jonathan S. Cohen, Murray S. Horwitz (argued), Tax Division, Dept. of Justice, Washington, D.C., for defendants-appellees.
 
 
 3
 Before JONES and WELLFORD, Circuit Judges, and ALLEN, District Judge.*
 
 
 4
 ALLEN, District Judge.
 
 
 5
 This is an appeal from the judgment of the district court dismissing the complaint, amended complaint and first amended complaint filed by the appellants in that court. The pleadings filed by the appellants allege, in substance, that jurisdiction is predicated on 28 U.S.C. Secs. 1331(a), 1343(4), 1361, 2201, and 2202; 42 U.S.C. Sec. 1985(3); 5 U.S.C. Sec. 702, and the First and Fifth Amendments to the Constitution.
 
 
 6
 Appellant Ecclesiastical Order of the ISM of AM (Ism of Am) alleges that it is a Michigan Ecclesiastical corporation operated exclusively for religious purposes. The two individual appellants are alleged to be ministers of the appellant church.
 
 
 7
 The pleadings go on to state that the Internal Revenue Service (IRS) has issued notices to the individual appellants stating that the Ism of Am is not a church for federal income tax purposes and is not operated exclusively for religious purposes. It is also alleged that an individual appellant has been informed that his charitable contributions to the Ism of Am will be disallowed. That allegation is followed by one that the appellant organization is automatically exempt from taxation as a bona fide church. Appellants go on to allege that the disallowance of contributions to the church will jeopardize its ability to survive.
 
 
 8
 Then follows an allegation that appellants are being deprived of their right to free exercise of their religious belief by reason of the IRS's disallowance of charitable contributions on the purported grounds that appellant and other mail order ministries are not eligible as religious organizations for tax exemption treatment. Appellants then allege that this characterization of their organization is a deprivation of their rights under the First and Fifth Amendments and also constitute an unconstitutional attempt by the IRS to establish a religion. Other allegations which appear in the pleadings add nothing except for an assertion that the appellees' actions in wrongfully identifying the Ism of Am as a mail order ministry have acted as a "Bill of Attainder."
 
 
 9
 In addition to these allegations made in the original complaint, the amended complaint and first amended complaint, allegations are made that unknown agents of the IRS designated as "John Doe" and "Mary Roe" have indulged in unconstitutional activities against the appellants to their damage in the amount of $5,000,000.
 
 
 10
 The prayer in the pleadings requests a declaratory judgment that the conduct of the appellees violate the First and Fifth Amendment rights of the appellants and are beyond the authority of the IRS. In addition, the prayer requests a preliminary and permanent injunction enjoining appellees from engaging in activities declared to be unconstitutional and illegal. Next follows a prayer for $5,000,000 damages and one for attorneys' fees. A request for mandamus relief was previously dismissed with the consent of the appellants.
 
 
 11
 District Judge Julian A. Cook, Jr., in an oral opinion, dismissed the pleadings upon three grounds. The first ground was that the Anti-Injunction Act, 26 U.S.C. Sec. 7421(a), and the Declaratory Judgment Act, 28 U.S.C. Sec. 2201, prohibit the granting of any relief to the appellants. The second ground was that the United States, acting through the IRS, was immune as a sovereign from any suit of this nature by taxpayers. The third ground was that the appellants had not named any specific individuals as defendants and that the failure to do so was fatal to any claims against these unknown defendants.
 
 
 12
 This Court agrees with Judge Cook's decision which dismissed the claims of the appellants upon the grounds that to allow them would be to violate the Anti-Injunction Act and the Declaratory Judgment Act. Therefore, it is not necessary for the Court to reach the question of whether or not the appellees were entitled to a judgment of dismissal on the grounds of sovereign immunity, or otherwise.
 
 
 13
 Title 26 U.S.C. Sec. 7421(a) provides as follows:
 
 
 14
 ... no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.
 
 
 15
 The Declaratory Judgment Act, 28 U.S.C. Sec. 2201, provides:
 
 
 16
 In a case of actual controversy within its jurisdiction, except with respect to Federal taxes ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration....
 
 
 17
 Appellants argue that they do not seek to restrain the collection of a tax, that they seek instead to restrain the IRS from allowing deductions to persons contributing to "church-type" institutions. Examination of appellants' amended complaint, however, compels us to conclude that, from the face of the complaint, appellants seek only to obtain tax-exempt status, and thus the restraint of the collection of taxes from contributors to the Ism of Am. In its complaint, appellant, Ism of Am, alleges that, contrary to the IRS' contention, it owes no taxes since it falls within the exemption for organizations operated for religious purposes. It claims injury in that the IRS' actions have deprived it of unknown sums of money by denying deductions to potential contributors. Appellants argue that the denial of tax-exempt status to the Ism of Am is unconstitutional, since "church-type" organizations are granted such status. See Complaint at paragraphs 5, 8, 23, 24, 28, and 33. A later amendment to their complaint, however, seeks to have 26 U.S.C. Sec. 170(b)(1)(A)(i) declared unconstitutional, and this is the basis for appellants' assertion that they do not seek to enjoin the collection of taxes. Section 170(b)(1)(A)(i), however, provides only for a limitation on the percentage of a taxpayer's income that may be deducted as a charitable contribution to a church.[1] It does not create the "church" deduction-contribution which is sought by appellant; if it were declared unconstitutional, this would merely result in there being no percentage limitation on the contributor's deduction for the type of contribution defined in 26 U.S.C. Sec. 170(c)(2)(B). Appellant in effect seeks restraint on limiting deductibility of a charitable contribution to a defined entity.
 
 
 18
 The clear effect of appellants' action, however, is to enjoin IRS, directly or indirectly, from collecting federal taxes in respect to the operations of the Ism of Am, and from those who make contributions to that organization and seek to reduce their taxes by so doing. The trial judge was correct in denying relief accordingly on grounds of the Anti-Injunction Act as well as by way of denying Declaratory Judgment relief.[2]
 
 
 19
 In Bob Jones University v. Simon, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), the question presented was "whether, prior to the assessment and collection of any tax, a court may enjoin the Service from revoking a ruling letter declaring that petitioner qualifies for tax-exempt status and from withdrawing advance assurance to donors that contributions to petitioner will constitute charitable deductions under Secs. 170(c)(2), 26 U.S.C. Sec. 170(c)(2)." See 727, 94 S.Ct. 2041. The Supreme Court held that a court may not enjoin the Service in such circumstance.
 
 
 20
 [t]he pressures operating on organizations facing revocation of Sec. 501(c)(3) status to seek injunctive relief against the Service pending judicial review of the proposed action conflict directly with a congressional prohibition of such enforcement tax suits.
 
 
 21
 416 U.S. 731, 94 S.Ct. 2043. As the Supreme Court also pointed out 416 U.S. 736, 94 S.Ct. 2046, the Anti-Injunction Act contains language that "could scarcely be more explicit...." Following that statement, the Court reiterated its opinion that only upon proof of two factors could the liberal terms of the Anti-Injunction Act be voided--irreparable injury and certainty of success on the merits. This determination would be made upon the basis of the information available to the government at the time of the suit; citing Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).
 
 
 22
 In Commissioner v. "Americans United" Inc., 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974), the respondents were treated as a tax exempt organization under 26 U.S.C. Sec. 501(c)(3) from 1950 until 1969, when the Service issued a ruling letter revoking the 1950 ruling. The effect of the letter was to render respondent liable for FUTA taxes and to destroy its eligibility for tax deductible contributions under 26 U.S.C. Sec. 170(c)(2). The respondents and two of its benefactors thereupon sought a declaratory judgment that the Service's determination was erroneous or unconstitutional, and injunctive relief requiring reinstatement of the 1950 ruling letter. The Supreme Court held as it did in Bob Jones University v. Simon, supra, and noted that "... a suit to enjoin the assessment or collection of anyone's taxes triggers the literal terms of Sec. 7421(a). See 416 U.S. at 760, 94 S.Ct. at 2058. The Court also noted that "... the constitutional nature of a taxpayer's claim, as distinct from its probability of success, is of no consequence under the Anti-Injunction Act." See 416 U.S. at 759, 94 S.Ct. at 2058.
 
 
 23
 In light of the Supreme Court's holdings in Bob Jones University v. Simon, supra, and Commissioner v. "Americans United" Inc., supra, and the similarity between the pleadings of the appellants in those cases to those of the case before us, we reach the conclusion that the district court correctly dismissed the action for lack of jurisdiction under the Anti-Injunction Act, as well as under the Declaratory Judgment Act. "The federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act." Bob Jones University, supra, 416 U.S. at 733, n. 7, 94 S.Ct. at 2044, n. 7. See also "Americans United" Inc. v. Walters, 477 F.2d 1169 (D.C.Cir.1973), reversed on other grounds, 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974). It should be added that the appellants' pleadings fall short of meeting the criteria set out in Enochs v. Williams Packing & Navigation Co., supra.
 
 
 24
 We have recently been furnished with an opinion by the Tax Court of the United States specifically holding that the Ism of Am, Inc. is not an organization which qualifies as a church for federal income tax purposes. See The Ecclesiastical Order of the Ism of Am, Inc. v. Commissioner, 80 T.C. No. 43 (May 2, 1983). Judge Tannenwald has held in that Declaratory Judgment action that the Ism of Am is not operated exclusively for exempt purposes under Sec. 501(c)(3) of the Internal Revenue Code, because it principally emphasizes and "advocates belief in the God of Tax Avoidance." 80 T.C. No. 43, p. 3200. Such action in case of other claimed "religious" organizations has been affirmed. Parker v. Commissioner, IRS, 365 F.2d 792 (8th Cir.1966).
 
 
 25
 Finally, as to the unnamed appellees, it is observed that Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), on remand, 456 F.2d 1339 (2d Cir.1972), authorizes a suit against unknown agents of the United States for acts which are in violation of the constitutional rights of a citizen. In light of that holding, and in light of the qualified immunity which agents of the IRS enjoy, see Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), it would be improper to dismiss the case as to the individual unknown agents at this stage of the proceedings despite the vague allegations made against them in the pleadings.
 
 
 26
 For the reasons stated above, we AFFIRM the decision of the district court, except as to the damage claims against unknown agents which are hereby REMANDED for further proceedings.
 
 
 27
 NATHANIEL R. JONES, Circuit Judge, concurring in part and dissenting in part.
 
 
 28
 I concur with the majority's decision to remand the case with respect to the individual Internal Revenue Service (IRS) agents, since they do not enjoy the privilege of absolute immunity by virtue of their positions. I dissent from that portion of the majority opinion which holds that the Anti-Injunction Act and the Declaratory Judgment Act deprive the court of jurisdiction in this case. In my view the majority misconstrues the applicability of the Acts and I shall set out my differences with them.
 
 
 29
 * I begin by discussing my understanding of the applicable standard of review. In considering a motion to dismiss for lack of subject matter jurisdiction, the complaint is to be liberally construed and all uncontroverted factual allegations on the face of the complaint are to be taken as true. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).
 
 
 30
 The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss ... the complaint should be construed favorably to the pleader.
 
 
 31
 416 U.S. at 236, 94 S.Ct. at 1686. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Byrd v. Wilson, 701 F.2d 592 (6th Cir.1983). Since the court is not to resolve issues of fact in the context of a motion to dismiss, the only pertinent issues presented by this appeal relate to the proper interpretation and application of the two acts in question and the doctrine of sovereign immunity.
 
 II
 
 32
 (a) Anti-Injunction and Declaratory Judgment Acts.
 
 
 33
 Appellants' complaint alleges that section 170(b)(1)(A)(i) of the Internal Revenue Code is unconstitutional because the criteria used by the IRS in determining what constitutes "a church or a convention or association of churches ..." constitutes an establishment of religion.[1] In essence, Sec. 170(b)(1)(A)(i) gives a greater tax deduction to an individual who contributes to an organization which qualifies as "a church or association of churches" than it gives for contributions to non-qualifying organizations.[2]
 
 
 34
 The scope of the prohibition in the Anti-Injunction Act (26 U.S.C. Sec. 7421(a)) is clearly far reaching. See e.g., Bob Jones University v. Simon, 416 U.S. 725, 736-37, 94 S.Ct. 2038, 2045-46, 40 L.Ed.2d 496 (1974); Enochs v. Williams Packing and Navigation Co., 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). Whenever the "necessary result of granting the relief prayed would be to prevent the assessment of any tax, Sec. 7421 is applicable." Bob Jones University v. Connally, 472 F.2d 903, 906 (4th Cir.1973).
 
 
 35
 This case, however, is not "for the purpose of restraining the assessment or collection of any tax." On the contrary, appellants contend that the criteria used by the IRS to determine whether they are a "church or association of churches" within the meaning of Sec. 170(b)(1)(A)(i) violates the Establishment Clause of the First Amendment.[3] Accordingly, they contend that allowing increased charitable deductions to any religious organization is unconstitutional. A successful suit by the ISM of AM would have resulted in reducing all such deductions and consequently, in increasing taxable revenues, not decreasing them. Thus the express terms of the Act itself clearly indicate that the statute is inapplicable to the present case. In addition, case law supports the same conclusion. See, e.g., Wright v. Regan, 656 F.2d 820 (D.C.Cir.1981), cert. granted, --- U.S. ----, 103 S.Ct. 3109, 77 L.Ed.2d 1365 (1983); Church of Scientology of Celebrity Centre v. Egger, 539 F.Supp. 491 (D.D.C.1982); Abortion Rights Mobilization, Inc. v. Regan, 552 F.Supp. 364 (S.D.N.Y.1982); Lugo v. Simon, 453 F.Supp. 677 (N.D.Ohio 1978), rev'd on other grounds sub nom. Lugo v. Miller, 640 F.2d 823 (6th Cir.1981).
 
 
 36
 In Wright v. Regan, 656 F.2d at 820, plaintiffs sued to stop the IRS from granting exemptions to private schools that excluded Blacks. They claimed that the conduct of the government permitted schools that discriminated on the basis of race to acquire and retain status as charitable organizations under Sec. 501(c)(3) and, thereby, to attract tax-deductible contributions for the schools' maintenance. Thus they claimed that part of each such contribution constituted prohibited government support of race discrimination in educational facilities. In considering the applicability of the Anti-Injunction and Declaratory Judgment Acts, the Court noted:
 
 
 37
 A suit to restrain the allowance of tax benefits falls outside the literal reach of Sec. 7421(a). Moreover, cases of this nature, ultimately raising nonfrivolous constitutional objections to IRS action, are "few and far between"; they do not threaten large interference by "public interest" litigants with the administrative process of collecting taxes.
 
 
 38
 656 F.2d at 836, n. 52.
 
 
 39
 A similar result was reached in a case involving a challenge to the validity of revenue ruling 69-545. Lugo v. Simon, 453 F.Supp. at 677. Revenue ruling 69-545 allowed hospitals to qualify as charitable organizations even if they refused to care for indigent patients without charge or at low rates. The government in Lugo claimed that the challenge to the ruling was barred by the Anti-Injunction and Declaratory Judgment Acts. The district court noted, however, that since the action was not one to enjoin or impede the collection of any tax, but instead was an action to force the IRS to tax contributions made to the hospitals concerned, "the action ... neither comes within the express terms of the statute, nor within its purpose as set forth by the Supreme Court in prior decisions involv[ing] the statute." 453 F.Supp. at 690. (Citations omitted)
 
 
 40
 In Bob Jones University v. Simon, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) and Commissioner v. "Americans United" Inc., 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974), the cases relied upon by the majority, the taxpayers claimed that it was unconstitutional for the IRS to revoke their tax-exempt status. In other words, they were attempting to avoid paying taxes which the IRS sought to impose. The nature of this case is entirely different. Appellants here seek to limit tax deductions for contributions to religious organizations which qualify under Sec. 170(b)(1)(A)(i). They are not attempting to reduce taxes. Like the appellants in Wright and Lugo, the ISM of AM is attempting to achieve a result which would increase rather than decrease tax revenues. Accordingly, the Anti-Injunction Act is inapplicable.
 
 
 41
 It follows that the Declaratory Judgment Act is inapplicable as well. The two Acts, though not similarly worded[4] are, as the majority notes, to be interpreted coterminously. See, Investment Annuity, Inc. v. Blumenthal, 609 F.2d 1, 4 (D.C.Cir.1979), cert. denied sub nom., Investment Annuity Inc. v. Miller, 446 U.S. 981, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980); Lugo v. Simon, 453 F.Supp. at 690. As the Court noted in Lugo, the Legislative history of the Declaratory Judgment Act indicates that "the congressional intent was to create a prohibition as to actions concerning federal taxes coterminous with that provided in the Anti-Injunction Act so as to preclude circumvention of the provisions of the Anti-Injunction Act through the maintenance of an action seeking declaratory relief only." 453 F.Supp. at 690. It is clear then, that the Declaratory Judgment Act is inapplicable to this case.
 
 
 42
 (b) Sovereign Immunity
 
 
 43
 Although the majority's holding rendered it unnecessary for them to address the issue of sovereign immunity, I would hold that sovereign immunity has been waived in this case.
 
 
 44
 5 U.S.C. Sec. 702 provides in pertinent part:
 
 
 45
 A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.... Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground ...
 
 
 46
 The legislative history of Sec. 702 and relevant case law clearly establish that Congress intended to waive sovereign immunity through this provision under certain circumstances. Jaffee v. United States, 592 F.2d 712 (3rd Cir.) cert. denied, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979); Watson v. Blumenthal, 586 F.2d 925 (2d Cir.1978); H.R.Rep. No. 94-1656, 94th Cong., 2d Sess. 1, reprinted in [1976] U.S.Code Cong. & Admin.News, pp. 6121, 6125. The key question, then, is to which circumstances this waiver was intended to apply.
 
 
 47
 In Watson v. Blumenthal, 586 F.2d at 925, the Second Circuit concluded that 5 U.S.C. Sec. 702 was meant to waive the defense of sovereign immunity in cases where jurisdiction otherwise existed. In other words, the court ruled that Sec. 702 "did not remove the defense of sovereign immunity in actions under 28 U.S.C. Sec. 1331." 586 F.2d at 932. Based on Watson, the government contends that although Sec. 702 defines when certain defenses are available, it does not create jurisdiction. The appellants point out, however, that the Second Circuit stance has been rejected by several courts. I agree with those latter courts and with appellants that the better view is that Sec. 702 was meant to be a waiver of sovereign immunity specifically for actions brought under Sec. 1331.
 
 
 48
 In Jaffee v. United States, 592 F.2d at 712 the government claimed sovereign immunity as a defense to the plaintiff's action which was brought under Sec. 1331 jurisdiction. In analyzing the applicability of the sovereign immunity defense, the court found that the plaintiff was entitled to sue the United States by virtue of the statutory waiver of immunity which exists in 5 U.S.C. Sec. 702. The court reasoned as follows:
 
 
 49
 We are constrained to disagree with the Second Circuit and to hold that section 702, when it applies, waives sovereign immunity in "non-statutory" review of agency action under section 1331.
 
 
 50
 592 F.2d at 718. Indeed this court very recently reached the same conclusion in Warin v. Director, Department of the Treasury, 672 F.2d 590, 591 (6th Cir.1982) ("We align ourselves with the Circuits that have concluded that 5 U.S.C. Sec. 702 waives the sovereign immunity defense in actions for non-monetary relief under Section 1331."). Beller v. Middendorf, 632 F.2d 788 (9th Cir.1980), cert. denied, 454 U.S. 855, 102 S.Ct. 304, 70 L.Ed.2d 150, reh'g denied, 454 U.S. 1069, 102 S.Ct. 621, 70 L.Ed.2d 605 (1981); Collyard v. Washington Capitals, 477 F.Supp. 1247 (D.Minn.1979); Salzman v. Stetson, 472 F.Supp. 848 (W.D.Pa.1979). I believe the holdings of Jaffee and Warin reflect the correct interpretation of Sec. 702. Consequently, in reaching this issue I would hold that the doctrine of sovereign immunity is inapplicable here.
 
 
 51
 Although I disagree with the majority's interpretation of the Anti-Injunction and Declaratory Judgment Acts, I imply no opinion on the merits of the underlying controversy.
 
 
 
 *
 Honorable Charles M. Allen, Chief Judge, United States District Court for the Western District of Kentucky, sitting by designation
 
 
 [1]
 26 U.S.C. Sec. 170(b)(1)(A)(i) provides:
 (b) Percentage limitations.--
 (1) Individuals.--In the case of an individual, the deduction provided in subsection (a) shall be limited as provided in the succeeding subparagraphs.
 (A) General Rule.--Any charitable contribution to--
 (i) a church or a convention or association of churches,
 * * *
 shall be allowed to the extent that the aggregate of such contributions does not exceed 50 percent of the taxpayer's contribution base for the taxable year.
 
 
 [2]
 The dissent contends that the Anti-Injunction Act and the Declaratory Judgment Act are inapplicable because declaring 26 U.S.C. Sec. 170(b)(1)(A)(i) unconstitutional would result in the reduction of all deductions and a consequent increase in taxable revenues; thus, the prohibition against suit "for the purpose of restraining the assessment or collection of any tax" would not apply
 All cases cited by the dissent concern suits that would not, if successful, deny tax revenues to the government. That is not the situation in the instant case. Consequently, the premise of the dissenting opinion is incorrect, and the cases relied on by the dissent for that premise are inapposite to the issue presented in the case at bar.
 In the instant case, if Sec. 170(b)(1)(A)(i) were declared unconstitutional, it would result in restraining the government from collecting taxes on that portion of a contribution that exceeded 50% of the taxpayer's contribution to a church for the taxable year. The dissenting opinion that invalidation of Sec. 170(b)(1)(A)(i) would result in the denial of exemptions for all contributions to churches indicates confusion of this section, which only limits the deduction of such charitable contributions, with 26 U.S.C. Sec. 170(c)(2)(B), which defines charitable contributions in relation to religious organizations.
 
 
 [1]
 In a 1978 speech given by the commissioner of the IRS, 14 criteria were suggested as a guide for which organizations should be given preferential treatment:
 
 
 [1]
 A distinct legal existence
 
 
 [2]
 A recognized creed and form of worship
 
 
 [3]
 A definite and distinct ecclesiastical government
 
 
 [4]
 A formal code of doctrine and discipline
 
 
 [5]
 A distinct religious history
 
 
 [6]
 A membership not associated with any other church or denomination
 
 
 [7]
 An organization of ordained ministers
 
 
 [8]
 Ordained ministers selected after completing prescribed services
 
 
 [9]
 A literature of its own
 
 
 [10]
 Established places of worship
 
 
 [11]
 Regular congregations
 
 
 [12]
 Regular religious services
 
 
 [13]
 Sunday schools for religious instruction of the young
 
 
 [14]
 Schools for the preparation of its ministers
 
 
 [2]
 26 U.S.C. Sec. 170(b)(1)(A)(i) provides:
 (b) Percentage limitations.--
 (1) Individuals.--In the case of an individual, the deduction provided in subsection (a) shall be limited as provided in the succeeding subparagraphs.
 (A) General rule.--Any charitable contribution to--
 (i) a church or a convention or association of churches
 * * *
 shall be allowed to the extent that the aggregate of such contributions does not exceed 50 percent of the taxpayer's contribution base for the taxable year.
 
 
 [3]
 The fact that the Tax Court has held that the ISM of AM is not a church for income tax purposes, does not resolve the issue of whether the criteria used in making that determination are constitutional
 
 
 [4]
 The Declaratory Judgment Act 28 U.S.C. Sec. 2201 provides in pertinent part:
 In a case of actual controversy within its jurisdiction, except with respect to Federal taxes ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration....