**Joan ZIELINSKI and John Zielinski, her husband**

v.

**Angelo J. ZAPPALA, D. O.**

**Civ. A. No. 77–787.**

United States District Court, E. D. Pennsylvania.

Feb. 7, 1979.

Supplemental Opinion April 30, 1979.

---

Mitchell S. Pinsly, Thomas B. Rutter, Philadelphia, Pa., for plaintiff.

David E. Faust, Post & Schell, Philadelphia, Pa., for Joel Berman.

Bennett, Bricklin & Saltzburg, Joel Paul Fishbein, Philadelphia, Pa., for defendant.

Rawle & Henderson, Philadelphia, Pa., for Bernard J. Amster.

## OPINION

POLLAK, District Judge.

In March 1977, plaintiffs Joan and John Zielinski, wife and husband, commenced this diversity action against defendant Dr. Angelo J. Zappala. According to paragraph 6 of the complaint:

> At the time and place described in the foregoing paragraphs of this Complaint [a Christmas Party at the Delaware Valley Hospital], Defendant Angelo J. Zappala was engaging in frolicsome behavior and horseplay which behavior, due to the carelessness and negligence of Defendant, caused Defendant to lose his balance and thereby fall upon Plaintiff Joan Zielinski, who was sitting in a chair.

Paragraph 8 further alleges that "[o]n or about January 3, 1977, Plaintiff Joan Zielinski was admitted to Delaware Valley Hospital whereupon surgery relating to herniated cervical discs was performed."

In April 1977, defendant Zappala filed an answer denying liability, and in June 1977, he joined Joel Berman as a third-party defendant, claiming that it was Berman who fell upon Mrs. Zielinski and who was the proximate cause of the alleged injuries. In August 1978, sixteen months after filing his answer, Zappala was granted leave by Judge Davis to join, as an additional third-party defendant, Dr. Bernard J. Amster, the osteopathic surgeon who performed the January 3, 1977 operation. This second third-party complaint alleges that Mrs. Zielinski's medical problems can be traced to Amster's medical malpractice. The case is

now before the Court on Amster's motion to dismiss the third-party complaint filed against him on the grounds that: (1) Zappala's joinder motion was not timely, and (2) this Court is deprived of original jurisdiction to hear medical malpractice claims by the Pennsylvania Health Care Services Malpractice Act, 40 P.S. § 1301.101 *et seq.*

## I.

A defendant who seeks to file a third-party complaint more than six months after answering bears the burden of justifying the delay. *Goodman v. Neff,* 251 F.Supp. 562, 564 (E.D.Pa.1966); *Delco Wire and Cable Co. v. Keystone Roofing Co.,* 80 F.R.D. 428 (E.D.Pa.1978). Here, Zappala argues that "because of the seriousness in alleging medical malpractice on the part of Bernard J. Amster, defendant delayed in joining him as a third-party defendant until he received the benefit of two medical opinions." This representation is sufficient to meet defendant's burden; and, as there is no evidence that Amster's joinder will cause significant delay or prejudice, there is no persuasive reason why that joinder should now be overturned.

## II.

The Pennsylvania Health Care Services Malpractice Act provides that a patient's medical malpractice claim shall, in the first instance, be channeled to compulsory arbitration:

The arbitration panel shall have original exclusive jurisdiction to hear and decide any claim brought by a patient or his representative for loss or damages resulting from the furnishing of medical services which were or which should have been provided. The arbitration panel shall also have original exclusive jurisdiction to hear and decide any claim asserted against a nonhealth care provider who is made a party defendant with a health care provider. 40 P.S. § 1301.309.

And where a patient brings a diversity action in a Pennsylvania federal court on a malpractice claim arising in Pennsylvania, the federal court must do what a Court of Common Pleas would have done in like case, i. e., stay its hand pending arbitration. *Edelson v. Soricelli,* No. 78–1580 (E.D.Pa., October 31, 1978); *Marquez v. Hahnemann Medical College and Hospital of Philadelphia,* 435 F.Supp. 972 (E.D.Pa.1976); *Dings v. Mosch,* 77–3291 (E.D.Pa., February 1, 1978); *Jeffries v. Stitzell,* No. 77–164 (E.D.Pa., January 30, 1978). See generally, Ely, *The Irrepressible Myth of Erie,* 87 *Harv.L. Rev.* 693 (1974). (Following arbitration, the losing party is entitled to take an "appeal" to the appropriate trial court, whether state or federal, for a "trial de novo.")[1] What

---

1. In its penultimate version, the Pennsylvania Health Care Services Malpractice Act explicitly contemplated recourse to federal as well as to state courts:

    Section 509. Appeals from determinations made by the arbitration panel shall be a trial de novo in the court of common pleas or United States District Court in accordance with the rules regarding appeals in compulsory civil arbitration and the Pennsylvania Rules of Civil Procedure or the Federal Rules of Civil Procedure, except that the party seeking to file an appeal must first pay all record costs to the prothonotary of the court in which he seeks to file his appeal. If the court of common pleas finds at the completion of the trial that the basis for the appeal was without justification, then the appellant shall be liable for all costs of arbitration and trial, including record costs, arbitrator's compensation discovery costs, and fees and expenses of the arbitration panel's expert witnesses.

House Bill No. 1367, Printer's No. 2185, at 10–11. A "clarifying" amendment by Senator Hager deleted all reference to federal courts, see Commonwealth of Pennsylvania Legislative Journal, Session of 1975: Senate, October 1, 1975, at 870–71. And as enacted, Section 1301.509 of the Act provides:

    Appeals from determinations made by the arbitration panel shall be a trial de novo in the court of common pleas in accordance with the rules regarding appeals in compulsory arbitration and the Pennsylvania Rules of Civil Procedure except that the party seeking to file an appeal must first pay all record costs of arbitration to the prothonotary of the court in which he seeks to file his appeal. If the court of common pleas finds at the completion of the trial that the basis for the appeal was capricious, frivolous and unreasonable, then the appellant shall be liable for all costs of arbitration and trial, including record costs, arbitrator's compensation dis-

distinguishes the present case is a question which apparently has not arisen before in a federal court: whether Section 1301.309 requires a trial court to defer to arbitration where the allegation of medical malpractice is contained in a third-party claim filed by a non-patient defendant seeking contribution from a physician. This question, however, has been considered by the Court of Common Pleas in Allegheny County and answered in the negative. *Taglieri v. Logansport Machine Co., Inc.,* 6 D. & C.3d 716 (1978); *Simko v. Bob Smith Ford, Inc.,* 5 D. & C.3d 538 (1978). For the reasons which follow, that answer also seems appropriate in this diversity action.

■ The arbitration provisions of the Malpractice Act were designed "to reduce frivolous [medical malpractice] claims and to expedite the disposition of cases in this area." *Parker et al. v. Children's Hospital of Philadelphia, et al.,* —— Pa.Super. ——, 394 A.2d 932, 936 (1978) (upholding constitutionality of arbitration provisions of the Act). The Malpractice Act embodies a compromise between plans which called for binding arbitration and those in which an arbitration panel was to act only as a screening device. Under the Act, arbitration is mandatory, but not binding; judicial review is by trial *de novo,* but the findings of the arbitration panel are admissible as evidence; and an appellant whose appeal is found to be "capricious, frivolous and unreasonable" is taxed with the costs, fees, and expenses of the panel. The legislative debates are recorded in the Commonwealth of Pennsylvania Legislative Journal, Session of 1975: House of Representatives, July 21, 1975 at pages 2250–2296 and 2318–2346, and October 15, 1975 at pages 2942–2946; Senate, October 1, 1975, at pages 869–877 and October 2, 1975 at pages 882–884. Nowhere in the debates were actions for contribution against health care providers considered.

■ While the purpose of the Act might be furthered by requiring arbitration of such third-party claims, the language of the Act will not support such a requirement. Section 1301.309, itself, speaks of *"claims brought by a patient or his representative* for loss or damages resulting from the furnishing of medical services," not claims brought by an alleged tort-feasor for contribution. (Emphasis added). And other provisions of the Malpractice Act also contemplate its application to actions brought by patients against health care providers. Section 1301.102 provides:

It is the purpose of this act to make available professional liability insurance at a reasonable cost, and to establish a system through which a *person who has sustained injury or death as a result of tort or breach of contract by a health care provider can obtain a prompt determination and adjudication of his claim* and the determination of fair and reasonable compensation. (Emphasis added).

Section 1301.401 provides:

*A patient or his representative, having a claim for loss or damages resulting from the furnishing of medical services* which were or which should have been provided, shall file with the administrator a complaint or such other form, with such fees, as prescribed by the rules and regulations adopted by the administrator. The administrator shall refer the complaint to the appropriate arbitration panel. The filing of the complaint with the administrator shall toll the statute of limitations. (Emphasis added).

Wherefor, the Order filed concurrently with this Opinion denies third-party defendant Amster's motion to dismiss defendant Zappala's third-party complaint. And it would expectably follow that this case would now proceed to a trial in this Court

covery costs, and fees and expenses of the arbitration panel's expert witnesses.
Nothing in the floor debates suggests that this amendment was intended to curb federal courts sitting in diversity in the exercise of a *de novo* revisory authority equivalent to the revisory authority of the Court of Common Pleas ex-

pressly acknowledged by the Act. It need hardly be added that a state legislature's attempt to contract federal court diversity jurisdiction in ways not applicable to the state courts would pose a very serious constitutional question.

of three claims: (1) the Zielinskis' claim that Zappala negligently injured Joan Zielinski; (2) Zappala's claim that Joan Zielinski's injury, if any, is attributable to Berman; and (3) Zappala's further claim that Amster was guilty of malpractice in treating Joan Zielinski. But this case seems to have an added procedural ingredient likely to generate a hitherto unexpected scenario. To that added ingredient, its implications, and what curative steps should be pursued, it is now appropriate to turn.

### III.

The added procedural ingredient is this: It appears that on August 29, 1978—four days after Judge Davis granted Zappala's motion to join Amster—the Zielinskis commenced a malpractice suit against Amster before the statutorily mandated malpractice arbitration panel.[2]

What are the implications of this event? In *Taglieri v. Logansport Machine, supra,* Judge Finkelhor had before her a case identical in posture—except that there the plaintiff had initiated his malpractice arbitration proceeding against certain health care providers concurrently with a product liability suit in the Court of Common Pleas, and hence prior in time to the joinder of the health care providers as third-party defendants in the Court of Common Pleas. Relying on her ruling in *Simko v. Bob Smith Ford, supra,* Judge Finkelhor denied a motion to dismiss the third-party complaint. But she then went on to say that "the liability of said health care providers to plaintiff shall be governed by the Pennsylvania Health Care Services Malpractice Act." 6 D. & C.3d at 720. Under *Erie,* this Court is required to deter to Judge Finkelhor's pronouncement of substantive law,

and accordingly, Amster's liability will "be governed by the Pennsylvania Health Care Services Malpractice Act."

After announcing this substantive rule, Judge Finkelhor went on to lay out two possible litigation scenarios designed to implement the rule—"As a practical matter, the pending action could be continued until the malpractice claim before the arbitration panel was completed, or, in the alternate [*sic*], the liability over claim of the original defendant could be severed for purposes of trial." Severing the third-party claim for trial would seem a counter-productive device, since it would negate the very economies gained by joinder. One may surmise, therefore, that continuance will prove to be the dominant state court practice.

Limitations on federal court jurisdiction make continuance a less satisfactory procedure here. While Judge Finkelhor had grounds for confidence that review of the decision of the malpractice arbitration panel would be in her Court,[3] the malpractice proceeding initiated by the Zielinskis cannot be reviewed here, for the reason that the Zielinskis and Amster are all Pennsylvania citizens. See *Johnson v. Better Materials Corporation,* 556 F.2d 131 (3d Cir. 1976). Piecemeal litigation may be inevitable. Nonetheless, it may prove desirable to follow what appears to be an authorized state court scenario and continue this action until the arbitration of the Zielinskis' malpractice claim against Amster is complete. It may be, for example, that the findings of the arbitration panel will be admissible on the third-party claim under *Taglieri's* doctrine that the third-party defendant's liability is governed by the Malpractice Act. See P.S. 40 § 1301.510.

2. The text sentence is phrased in slightly tentative form ("It appears that . . .") because the statement that the Zielinskis have initiated a separate malpractice action derives not from a factual recital made, or admitted, by the Zielinskis, but from papers (specifically the Memorandum of Law in Support of Amster's Motion to Dismiss, p. 2, and Exhibit B annexed to the Memorandum) filed by third-party defendant Amster. The Zielinskis have not taken issue with this representation. Presumably this Opinion will prompt them to challenge the representation if it is inaccurate.

3. For the reasons canvassed in Part II of this Opinion, neither the product liability defendant in *Taglieri,* nor Zappala or Berman in the instant case, could initiate a malpractice arbitration proceeding, since none of them is a patient or represents a patient. Nor could any of them be joined as third-party defendants in a malpractice arbitration, since the panel is confined to the adjudication of malpractice issues. *Gillette v. Redinger,* 34 Pa.Cmwlth. 469, 383 A.2d 1295 (1978).

However, none of the parties has been heard on the desirability of continuing this action until arbitration of the Zielinskis' claim against Amster is complete. For that reason, all parties will be given thirty days from the date of this Opinion to file written submissions on whether this action should be continued until the Zielinskis' malpractice arbitration is complete. In addressing this question, the parties would be well advised to consider, in the light of whatever competent evidence is available, the extent of the delay such a continuance might entail.

## SUPPLEMENTAL OPINION

On February 7, 1979, I issued an opinion, denying Dr. Amster's motion to dismiss the third-party complaint filed against him in the above-captioned case. The opinion concluded that the compulsory arbitration provisions of the Pennsylvania Medical Malpractice Act did not embrace claims for contribution brought by a non-patient defendant against an alleged medical malpractitioner. Subsequently, on February 15, 1979, the Pennsylvania Superior Court reached the same result. *Staub v. Southwest Butler City School District,* —— Pa.Super. ——, 398 A.2d 204 (1979).

This case has a complicating ingredient not found in *Staub:* the plaintiffs here have lodged a separate malpractice claim against Dr. Amster, and that claim (which does not involve parties of diverse citizenship and hence could not be made part of this lawsuit) is now awaiting arbitration. In my February 7 opinion, I noted this complicating factor and invited counsel's views on the advisability of continuing this action until the arbitration was complete. After reading supplemental briefs submitted by counsel and holding a conference in chambers, I have concluded that such a continuance is unwarranted.

██ Two considerations inform that decision: First, I am persuaded that my suggestion that the findings of the arbitration panel could be introduced in this case to aid the jury in determining the merits of the third-party claim (see February 7 opinion at 8) was probably unsound. Since the third-party plaintiff would not be a party to the arbitration proceeding, panel findings favorable to his adversary (the physician who is the third-party defendant here) would be of no weight as against the third-party plaintiff. Second, I am not persuaded that any gain in judicial economy would result from a continuance. Since the plaintiffs' malpractice claim cannot be litigated in this forum, see *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), piecemeal litigation seems inevitable. Better that trial of this lawsuit get under way soon rather than wait on an arbitration process that may require an extended period of time to complete.*

---

* Judge Hoffman's concurrence in *Staub* casts considerable doubt on my observation that "defendant Amster's liability will 'be governed by the Malpractice Act.'" February 7 opinion at page 7, quoting *Taglieri v. Logansport Machine Co., Inc.* 6 D. & C.3d 716 (1978).