**Robert E. AHERN, et al., Plaintiffs,**

v.

**Roy GAUSSOIN, et al., Defendants.**

**Civ. Nos. 83–1167–RE, 83–1963–RE, 83–1964–RE and 83–1965–RE.**

United States District Court, D. Oregon.

Oct. 25, 1984.

Bruce M. Hall, John F. McGrory, Jr., Sarah J. Ryan, Bruce MacGregor Hall, P.C., Portland, Or., for plaintiffs.

Marco J. Magnano, Jr., Foster, Pepper & Riviera, Seattle, Wash., Donald Winfree, Portland, Or., Paul A. Renne, Cooley, Godward, Castro Huddleson & Tatum, San Francisco, Cal., Leslie M. Roberts, Kell, Alterman & Runstein; James C. Waggoner, Benjamin, Waggoner, Chapman & Farleigh; Craig D. Bachman, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young; Richard Bayless, Hampson, Bayless & Murphy; Frank H. Lagesen, Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland, Or., Bruce E.H. Johnson, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., William F. Martson, Jr., Tonkon, Torp, Galen, Marmaduke & Booth, Portland, Or., for defendants.

## OPINION

REDDEN, District Judge:

Plaintiffs brought this action for alleged violations of the Securities Act of 1933, the Securities Exchange Act of 1934, the Racketeer Influenced and Corrupt Organizations Act of 1970, and numerous state statutory and common laws. I have previously issued an Order granting third-party defendant Seattle-First National Bank's motion to dismiss the third-party complaint against it. The following Opinion contains the reasons for my decision.

*Background*

Plaintiffs in the original action hold subordinated thirty day demand notes issued by Tradex, Inc. (Tradex), an Oregon corporation. For a number of years Tradex and its predecessor, Transport Clearings Northwest, were in the business of factoring the accounts of Portland-area trucking companies. According to the amended third-party complaint, Tradex and Seattle-First National Bank (Seattle-First) entered into a 1976 agreement pursuant to which Seattle-First agreed to loan Tradex up to $12,000,-000 or 75% of the value of specified Tradex accounts receivable. Third-party plaintiffs, who are present and former directors of Tradex, further allege that the upper limit of the loan was subsequently raised to $20,000,000.

Plaintiffs in the original action allege that beginning in 1982 Tradex entered into risky and improper financial dealings, which it failed to accurately describe in certain prospectuses as well as in various documents filed with the Securities and Exchange Commission. Plaintiffs further allege that Tradex's financial position began to worsen and that as a result Tradex used what plaintiffs describe as a bank "float" to finance its operations.[1] According to plaintiffs' third amended complaint, Tradex manipulated its line of credit "in order to conceal from [Seattle-First] its difficulties in covering its current obligations, and in order to avoid a default under its loan agreement...." Plaintiffs allege that Seattle-First ultimately claimed Tradex's activities were improper, illegal and in violation of the parties' loan agreement. On January 26, 1983, Seattle-First declared Tradex in default of its loan, thereby, plaintiffs allege, rendering Tradex unable to redeem the notes held by plaintiffs.

Plaintiffs filed their first complaint in this case on July 29, 1983, naming a number of Tradex officers and directors as defendants. Plaintiffs have subsequently added Tradex's attorneys and accountants as defendants. Plaintiffs have not sued either Tradex or Seattle-First. Plaintiffs filed their second amended complaint on April 13, 1984. Defendant directors filed their answer to that complaint on May 15, 1984. On May 25, 1984, the Tradex directors filed a third-party complaint against Tradex and Seattle-First. Seattle-First moved to dismiss that complaint, and third-party plaintiffs then filed an amended third-party complaint against Seattle-First only. I consider Seattle-First's motion to dismiss as directed against the amended third-party complaint.

*Discussion*

Federal Rule of Civil Procedure 14(a) provides that:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. The third-party plaintiff need not obtain leave to make the service if he files the third-party complaint not later than 10 days after he serves his original answer. Otherwise he must obtain leave on motion upon notice to all parties to the action.

■■■■ Third-party plaintiffs' complaint was filed within ten days of its answer to the second amended complaint. The second amended complaint did not change the need for impleader, however, and third-party plaintiffs may therefore implead Seattle-First only with leave of the court. *See In re 'Agent Orange' Product Liability Litigation,* 100 F.R.D. 778 (E.D.N.Y.1984). The decision to allow impleader under Rule 14 is entrusted to the court's sound discretion. *United States v. One 1977 Mercedes Benz,* 708 F.2d 444, 452 (9th Cir.1983), *cert. denied sub nom. Webb v. United States,* — U.S. ——, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984). For impleader to be proper, the third-party claim "must be derivatively based on the original plaintiff's claim." *Id.*

---

1. Third-party defendant describes this "float" as a "check kite," which is "a scheme whereby false credit is obtained by the exchange and passing of worthless checks between two banks." *Falconi v. FDIC,* 257 F.2d 287, 289 (3d Cir.1958).

**40**

The court should also consider the possibility of delay and prejudice to other parties, as well as whether the third-party claim lacks merit. 6 C. Wright & A. Miller, Federal Practice and Procedure § 1443 (1971).

The directors allege in their amended third-party complaint that they are entitled to indemnity and contribution from third-party defendants. They also have claims for conversion, interference with contractual relations, misrepresentation and negligence. The essence of the directors' factual allegations against Seattle-First is contained in ¶ 26 of the amended third-party complaint. There, the directors allege

> that from early 1982 until January 1983, Sea-First and its agents participated in an alternative financing arrangement with Tradex and First National Montana Bank whereby Tradex obtained certain financing for the mutual benefit of itself and Sea-First. Sea-First and its agents were aware of and knowingly and intentionally participated in this arrangement and substantially profited by it. Although directors maintain that their participation in the arrangement was entirely innocent, in case they are found liable under any federal or state securities law, directors are informed and believe and allege in the alternative that Sea-First and its agents participated in and lent substantial assistance to the arrangement even though they knew the arrangement was a scheme to defraud plaintiff noteholders. Sea-First and its agents substantially assisted this fraudulent scheme by making, accepting and encouraging certain transfers of funds, making false representations of Tradex' financial condition to persons responsible for compiling Tradex' offering circulars, performing these acts with intent to mislead investors and fraudulently induce them to purchase the notes, and with intent to freeze the Tradex notes, which they eventually did, thereby causing the entire damage suffered by plaintiff noteholders. . . .

The benefit to Seattle-First of the alleged "alternative financing arrangement" is apparently that described in paragraphs 9–12 of third-party plaintiffs' amended complaint. There, third-party plaintiffs allege that Seattle-First assessed special interest charges against the "negative collected balances" created when checks were deposited in Tradex's Seattle-First accounts and then funds were withdrawn against those deposits before the checks had cleared. The amended complaint contains no more specific allegations about Seattle-First's participation in any fraudulent activity than these.

▮ The initial question is whether the court has ancillary jurisdiction over the claims in the third-party complaint. Third-party claims are ancillary "if the claims arise out of the subject matter of the original action and involve the same persons and issues ... or if they arose out of the same 'transaction or occurrence.' " *United States v. United Pacific Insurance Company*, 472 F.2d 792, 794 (9th Cir.) *cert. denied*, 411 U.S. 982, 93 S.Ct. 2273, 36 L.Ed.2d 958 (1973). If the court has ancillary jurisdiction of the claims in the third-party complaint, independent federal jurisdiction need not exist. *United States v. Pioneer Lumber Treating Co.*, 496 F.Supp. 199, 202 (E.D.Wash.1980).

▮ I conclude that ancillary jurisdiction is present. It is true, as Seattle-First points out, that indemnification is unavailable under the federal securities laws. *See Laventhol, Krekstein, Horwath & Horwath v. Horwitch*, 637 F.2d 672, 676 (9th Cir.1980), *cert. denied*, 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981) (1933 Act); *Stowell v. Ted S. Finkel Investment Co., Inc.*, 641 F.2d 323, 325 (5th Cir.1981) (1934 Act). Contribution is available, however. *See, e.g., Horwitch*, 637 F.2d at 675 (1933 Act); *Stratton Group, Ltd. v. Sprayregen*, 466 F.Supp. 1180, 1185 (S.D.N.Y.1979) (1934 Act). Contribution will be required only from a joint tortfeasor. *Horwitch*, 637 F.2d at 675. To establish that Seattle-First is a joint tortfeasor, the directors must show that if they are liable to plaintiffs, Seattle-First is liable to them for the same harm. *Wassel v. Eglowsky*, 399

F.Supp. 1330 (D.Md.1975), *aff'd*, 542 F.2d 1235 (4th Cir.1976).

The directors have not challenged Seattle-First's contention that on the facts alleged it could not be found liable for contribution under the Securities Act of 1933. They do assert that they state a claim against Seattle-First for aiding and abetting a violation of § 10(b) of the Securities Exchange Act of 1934. The elements of such a cause of action are:

> (1) the existence of an independent primary wrong; (2) actual knowledge by the alleged aider and abettor of the wrong and his or her role in furthering it; and (3) substantial assistance in the wrong.

*Harmsen v. Smith*, 693 F.2d 932, 943 (9th Cir.1982), *cert. denied*, — U.S. —, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983).

Plaintiffs in the original action have alleged liability under § 10(b) based on violations of the loan agreement with Seattle-First. Assuming that plaintiffs prove this claim, the directors could recover on their contribution claim if they establish Seattle-First's knowledge of the wrong and substantial assistance to it.

The directors have alleged that Seattle-First knowingly participated in a fraudulent financing "arrangement" that damaged plaintiffs.[2] Seattle-First correctly urges that courts must prevent the imposition of aider and abettor liability for the performance of normal banking services. *See Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 96 (5th Cir.1975). It is also true, however, that the directors have alleged, albeit in very vague terms, more than the mere performance of normal banking services. I conclude that the directors have stated a colorable claim for contribution under the Securities Exchange Act, and that there is ancillary jurisdiction of this claim since it arises out of the same subject matter as the original action. *See*

*United Pacific Insurance Company*, 472 F.2d at 794.

In addition, the directors' claims for indemnity and contribution based on plaintiffs' state law claims against the directors are within the court's ancillary jurisdiction. *See Maryville Academy v. Loeb Rhoades & Co.*, 530 F.Supp. 1061, 1073 (N.D.Ill. 1981). Finally, the directors' remaining state law claims are also within the court's ancillary jurisdiction since there is a strong factual and legal nexus between them and plaintiffs' claims in the original action; they do not simply arise from the "same general background" as plaintiffs' claims. *See United Pacific Insurance Company*, 472 F.2d at 795.

The purpose of impleader is to "avoid circuity of action and eliminate duplication of suits based on closely related matters." Wright & Miller, *supra*, at 210. As noted previously, this policy must be weighed against certain other factors, including delay and prejudice to other parties. Based on those considerations, I conclude that Seattle-First's motion to dismiss should be granted.

First, I find that permitting impleader would delay and confuse this litigation. This is a complex securities case involving numerous parties and claims. The parties disagree about the amount of additional discovery impleader of Seattle-First would require, but there is no doubt that some additional discovery would be necessary. This is particularly true given the high probability that impleader would lead to the filing of various cross-claims and counterclaims. *Cf. Grossman*, 100 F.R.D. at 781.

The directors also have the burden of justifying their own delay in bringing the third-party action. *See Delco Wire and Cable Co. v. Keystone Roofing Co.*, 80 F.R.D. 428, 430 (E.D.Pa.1978). The original third-party complaint was filed approxi-

---

**2.** It is questionable whether the allegations of fraud in the third-party complaint are specific enough to meet the requirements of Federal Rule of Civil Procedure 9(b). *See generally Walling v. Beverly Enterprises*, 476 F.2d 393 (9th Cir.1973). I need not resolve this issue in light of my decision that even if the court has ancillary jurisdiction of the directors' claims the third-party complaint should be dismissed.

mately ten months after this action was commenced. The directors have presented no excuses for that delay, nor have they shown why Seattle-First could not have been impleaded based on plaintiffs' first complaint. *See Grossman*, 100 F.R.D. at 781.

Plaintiffs have taken no position on this motion, or on whether or not its denial would prejudice plaintiffs' rights. I conclude that impleader could prejudice those rights by further delaying this action. *See Kopan v. George Washington University*, 67 F.R.D. 36 (D.D.C.1975). Finally, although the merits of the directors third-party claims cannot be adequately assessed looking only at the pleadings, I do consider that despite filing two third-party complaints, the directors' allegations of wrong doing by Seattle-First remain vague and conclusory. The directors have not made a showing that these claims are very substantial, and the benefits of trying them in the context of this action are not such that impleader should be allowed. *See id.* at 38.

*Conclusion*

Seattle-First's motion to dismiss the third-party complaint is granted. I decline to award costs and attorney's fees to Seattle-First.