UNITED STATES of America, Plaintiff,

v.

NEW CASTLE COUNTY, William C. Ward, Stauffer Chemical Company and ICI Americas Inc., Defendants.

NEW CASTLE COUNTY, Stauffer Chemical Company and ICI Americas Inc., Defendants/Third-Party Plaintiffs,

v.

AVON PRODUCTS, INC., NVF Company, the Budd Company, Hercules, Incorporated, Specialty Composites Corporation, Standard Chlorine of Delaware, Inc., Diamond Shamrock, American Hoechst Corporation, E.I. DuPont de Nemours & Co., Motor Wheel Corporation, General Motors Corporation, Chrysler Corporation, Witco Chemical Corporation, Amoco Chemical Corporation, Keysor-Century Corporation, Koppers Company, Inc., Chloramone Corporation, FMC Corporation, Allied Corporation, Westvaco Corporation, Wilmington Chemical Corporation, Gates Engineering, Atlantic Aviation Corporation, Kennecott Corporation, Champlain Cable Corporation, Ametek, Inc., State of Delaware and Harvey & Harvey, Third-Party Defendants.

Civ. A. No. 80–489 LON.

United States District Court,
D. Delaware.

July 17, 1986.

Richard G. Andrews, Dept. of Justice, Wilmington, Del.; of counsel: Judith A. Dorsey, U.S. E.P.A., Philadelphia, Pa., William D. Evans, Jr., Dept. of Justice, Washington, D.C., for plaintiff U.S. of America.

B. Wilson Redfearn, of Tybout, Redfearn, Casarino & Pell, Wilmington, Del.; of counsel: George J. Weiner, of Schmeltzer, Aptaker & Sheppard, Washington, D.C., for defendant/third-party plaintiff New Castle County.

James F. Burnett, of Potter Anderson & Corroon, Wilmington, Del., for defendant William C. Ward.

Jeffrey B. Bove, of Connolly, Bove, Lodge & Hutz, Wilmington, Del.; of counsel: Gerald Sobel, of Kaye, Scholer, Fierman, Hays & Handler, New York City, Wendy J. Tish, of Stauffer Chemical Co., Westport, Conn., for defendant/third-party plaintiff Stauffer Chemical Co.

Joseph C. Kelly, of ICI Americas Inc., Wilmington, Del.; of counsel: Denis V.

Brenan, of Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant/third-party plaintiff ICI Americas Inc.

Gerald C. Foulk, of Miller & Foulk, Wilmington, Del.; of counsel: J. Brian Molloy, of Wald, Harkrader & Ross, Washington, D.C., for third-party defendant Avon Products, Inc.

James T. McKinstry, of Richards, Layton & Finger, Wilmington, Del., for third-party defendants NVF Co., General Motors Corp. and Diamond Shamrock.

J.R. Julian, Wilmington, Del.; of counsel: Jennifer Berke, of Kelly, Harrington, McLaughlin & Foster, Philadelphia, Pa., for third-party defendant The Budd Co.

Henry N. Herndon, Jr., of Morris, James, Hitchens & Williams, Wilmington, Del.; of counsel: Edward Wolper, of Hercules, Inc., Wilmington, Del., for third-party defendant Hercules, Inc.

James F. Bailey, of Elzufon & Bailey, Wilmington, Del.; of counsel: Joseph G. Manta, of Frumkin & Manta, Philadelphia, Pa., for third-party defendant Specialty Composites Corp.

James C. Laager, of Saul, Ewing, Remick & Saul, Wilmington, Del., for third-party defendant Standard Chlorine of Delaware, Inc.

C. Scott Reese, of Cooch & Taylor, Wilmington, Del.; of counsel: Lorelei J. Borland, of Morgan, Melhuish, Monaghan, Meyer, Arvidson, Arbrutzer & Liskowski, New York City, for third-party defendant American Hoechst Corp.

Richard Allen Paul, of E.I. DuPont de Nemours & Co., Wilmington, Del., for third-party defendant E.I. DuPont de Nemours & Co.

David C. Toomey, of Duane, Morris & Heckscher, Philadelphia, Pa., for third-party defendants Motor Wheel Corp. and Allied Corp.

Kurt J. Doelze, of Ferri & Doelze, Wilmington, Del.; of counsel: Harry A. Short, Jr., of Liebert, Short, Fitzpatrick & Hirshland, Philadelphia, Pa., for third-party defendant Chrysler Corp.

John C. Phillips, Jr., of Phillips & Snyder, Wilmington, Del.; of counsel: Thomas J. Jackson, of Thorp, Reed & Armstrong, Pittsburgh, Pa., for third-party defendant Witco Chemical Corp.

Howard M. Berg, of Howard M. Berg & Associates, Wilmington, Del.; of counsel: Ronald J. Ganim, of Amoco Corp., Chicago, Ill., for third-party defendant Amoco Corp.

William J. Weir, Jr., of Herlihy & Weir, Wilmington, Del., for third-party defendant Keysor-Century Corp.

John C. Phillips, Jr., of Phillips & Snyder, Wilmington, Del.; of counsel: Jill M. Blundon, of Koppers Co., Inc., Pittsburgh, Pa., for third-party defendant Koppers Co., Inc.

John W. Noble, of Parkowski, Noble & Guerke, Dover, Del., for third-party defendant Chloramone Corp.

John C. Phillips, Jr., of Phillips & Snyder, Wilmington, Del.; of counsel: William R. Herman, of Dechert Price & Rhoads, Philadelphia, Pa., for third-party defendant FMC Corp.

Thomas G. Hughes, of O'Donnell & Hughes, Wilmington, Del.; of counsel: Brigid E. Kenney, of Venable, Baetjer & Howard, Baltimore, Md., for third-party defendant Westvaco Corp.

Stephen P. Lamb, of Skadden, Arps, Slate, Meagher & Flom, Wilmington, Del.; of counsel: John H. Klock, of Crummy, DelDeo, Dolan, Griffinger & Vecchione, Newark, N.J., for third-party defendant Wilmington Chemical Corp.

James P. Collins, of Healy and Collins, Wilmington, Del.; of counsel: Blake A. Biles, of Jones, Day, Reavis & Pogue, Washington, D.C., for third-party defendant Gates Engineering.

James T. McKinstry, of Richards, Layton & Finger, Wilmington, Del.; of counsel: Franklin S. Eyster, II, of Atlantic Aviation Corp., Wilmington, Del., for third-party defendant Atlantic Aviation.

Robert J. Katzenstein, of Lassen, Smith, Katzenstein & Furlow, Wilmington, Del.; of counsel: Stephen W. Miller, of Clark, Ladner, Fortenbaugh & Young, Philadel-

phia, Pa., for third-party defendant Kennecott Corp.

Henry N. Herndon, Jr., of Morris, James, Hitchens & Williams, Wilmington, Del., for third-party defendants Champlain Cable Corp. and Ametek, Inc.

Robert R. Thompson, Dept. of Justice, Dover, Del., for third-party defendant State of Del.

James M. Geddes, of Ashby, McKelvie & Geddes, Wilmington, Del., for third-party defendant Harvey & Harvey.

## OPINION

LONGOBARDI, District Judge.

In a lawsuit emanating from the disposal of hazardous materials at Tybout's Landfill in New Castle County, Delaware, fifteen of the Third-Party Defendants [1] ("Third-Party Defendants") impleaded by New Castle County ("the County"), Stauffer Chemical Company ("Stauffer") and ICI Americas Inc. ("ICI") (collectively referred to as "Third-Party Plaintiffs"), seek dismissal of the third-party complaints filed against them because of late joinder.

The procedural events which frame the delay at issue on this motion began in October, 1980, when the United States filed a complaint against the County, Stauffer and the landfill owner requesting injunctive relief pursuant to section 7003 of the Resource Conservation and Recovery Act ("RCRA"). In an amended complaint filed in March, 1982, the United States added prayers for injunctive relief pursuant to section 106 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") against the same three Defendants. In April, 1984, the United States filed a second amended complaint that named ICI as a Defendant. Pursuant to section 107 of CERCLA, the complaint also asked that all four Defendants be held responsible for any clean-up expenses incurred by the United States. ICI subsequently began an aggressive process of nonparty discovery to locate other potentially liable entities. Over one year later, in April, 1985, ICI filed both an answer to the Government's second amended complaint and numerous third-party complaints against other alleged tortfeasors. The County and Stauffer filed similar third-party complaints in May, 1985. The Court received the first of the now consolidated motions to dismiss for late joinder two months later.

### A. The Factors that Determine a Late Joinder Motion

When faced with motions to dismiss for late joinder, the courts of this circuit have examined the (1) possible prejudice to the plaintiff, (2) the possible prejudice to the third-party defendants, (3) the reasons for the delay in joinder, and (4) whether the joinder will delay or unnecessarily complicate the trial.[2] See Delco Wire and Cable Co. v. Keystone Roofing Co., 80 F.R.D. 428, 430 (E.D.Pa.1978). The cases have weighed these factors against Rule 14's goal of avoiding circuity of actions and a multiplicity of suits. Id.; see also Colton v. Swain, 527 F.2d 296, 299 (7th Cir.1975).

#### 1. Prejudice to the Plaintiff and Impact on the Trial

The issues of prejudice to the Plaintiff and inefficiencies at trial need not detain us on this motion. The Government emphatically supports joinder of all potentially responsible parties in this case because its prior experience in Superfund liti-

---

**1.** The fifteen Third-Party Defendants joining in this motion are: The Budd Company, Allied Corporation, Chrysler Corporation, E.I. DuPont de Nemours & Co., Gates Engineering, Koppers Company, Inc., Motor Wheel Corporation, Specialty Composites Corporation, Westvaco Corporation, Witco Chemical Corporation, NVF Company, Diamond Shamrock, General Motors Corporation, Atlantic Aviation Corporation and Wilmington Chemical Corporation.

**2.** Some courts also examine the merits of the third-party complaint. See Ahern v. Gaussoin, 104 F.R.D. 37, 39 (D.Or.1984); Kopan v. George Washington University, 67 F.R.D. 36, 38 (D.D.C. 1975). The Court's finding in a separate opinion that a right to contribution exists under CERCLA satisfies this inquiry.

gation suggests that such comprehensive actions expedite the settlement of claims and the clean up of contaminated sites. In addition, the joinder of these parties will not endanger our prospects for a prompt and judicious trial because the Court has neither fixed a trial date nor settled upon a plan for trying this multi-party, multi-issue case.[3]

## 2. *Prejudice*

The Third-Party Defendants allege that they will be severely prejudiced in their ability to prepare an adequate defense because their adversaries have entered nearly 500 docket items and have compiled substantial volumes of discovery during the past four and one-half years. They claim prejudice from both the onerous task of digesting this vast material and their exclusion from the numerous depositions and conferences that now affect their positions. In addition, Third-Party Defendants allege harm to their ability to reconstruct the events of 1969–1971 because some witnesses may now be unavailable or unretentive. They blame all of these alleged harms upon their delayed joinder.

■ The Third-Party Defendants fail to appreciate that "[t]he relevant reference point in determining prejudice is not the relative resources that [the Third-Party Defendants] will expend in defending, as opposed to not defending, the third-party action. Rather, prejudice to a third-party defendant must be measured by whether the third-party defendant will incur greater expense or be at a greater disadvantage in defending a third-party suit than in defending a separate action brought against it." *Old Republic Ins. Co. v. Concast, Inc.*, 99 F.R.D. 566, 569–70 (S.D.N.Y.1983). In a separate action, the Third-Party Defendants would still bear the duel burden of reviewing the discovery taken in this case and conducting their own investigation. In

the apt words of another court, the discovery obstacles cited by the Third-Party Defendants "[do] not impress us since full discovery is available in this matter."[4] *Carter v. Anika Manufacturing Corp.*, 321 F.Supp. 197, 199 (E.D.Pa.1971). The mere "inconvenience" Third-Party Defendants face does not justify a dismissal for late joinder. Their burden is to show "substantial litigation handicap[s]." *Delco Wire*, 80 F.R.D. at 431.

■ The Court also finds unconvincing the Third-Party Defendants' speculative fears about unavailable or unenlightening witnesses. *See Judd v. General Motors Corporation*, 65 F.R.D. 612, 615 (M.D.Pa. 1974) (claims of prejudice should be specific). The Third-Party Defendants have not identified a single absent witness. The closest they have come is an assertion by DuPont that "[in] April, 1985, several of DuPont's most knowledgeable waste disposal employees participated in the early retirement program and are unavailable to testify." Docket Item ("D.I.") 854, Exhibit E. The suggestion that retirement from DuPont vitiates the authority of a Federal Court to subpoena a person is somewhat puzzling. DuPont's retirees, and all other persons with knowledge of the events in dispute, remain subject to deposition. Third-Party Defendants cannot claim prejudice from unavailable witnesses without first attempting to locate them.

■ Similar flaws plague Third-Party Defendants' complaints about the diminished recollection of important witnesses. *See Thompson v. Phillips Equipment and Supply Company*, 53 F.R.D. 91, 93 (E.D. Pa.1971) (third-party defendants are prejudiced where late joinder requires them to reconstruct the events in question at a time much further removed than if they had been promptly joined). The Third-Party Defendants have not identified a single ex-

---

3. Several days before argument on this motion, the Third-Party Defendants moved for separate trials. The Court will decide this motion at a later time.

4. Discovery is presently scheduled to continue until September 2, 1986, a full sixteen months after joinder of the Third-Party Defendants. The Court set this date at Third-Party Defendants' request and has heard no argument that the time allotted is inadequate.

ample of prejudice caused by a witness' lapsed memory. Moreover, the movants' speculative fear of further harm seems unfounded because this case emanates from events more than fifteen years old. It is difficult to believe that the marginal delay of an additional year prior to joinder has caused a sudden purging of witnesses' recollections about these distant events.

After reviewing the Third-Party Defendants' claims of prejudice, this Court must conclude that none of the alleged harms is a litigation handicap persuasive of the motion to dismiss.

### 3. Excusability of the Delay

The Third-Party Plaintiffs bear the burden of justifying their delay. *Delco Wire,* 80 F.R.D. 428. In this case, the Third-Party Plaintiffs must explain two distinct periods of delay. The first period spans the one year between ICI's joinder as a Defendant and the filing of its third-party complaints. The second period covers the greater delay occasioned by the County and Stauffer.

ICI attributes its one year delay in joining Third-Party Defendants to the extensive and vigorous investigation it pursued to locate other potentially liable parties. The Third-Party Defendants do not dispute that immediately following its joinder as a Defendant, ICI reviewed the extensive record then before the Court, filed document requests with both the federal and state governments, subpoenaed documents from and deposed employees of generators and haulers and pursued both fruitful and barren leads into the identity of potentially liable entities. The Third-Party Defendants argue, however, that ICI's investigation consumed excessive time because the facts that warranted joinder of each of them existed well before April, 1985. For example, The Budd Company ("Budd") states that after it produced documents and employee deponents in August, 1984, it heard nothing from ICI until the latter sent

it a joinder notice in April, 1985. The other Third-Party Defendants make similar claims, although the number of months between their discovery responses and joinder vary. In essence, each Third-Party Defendant alleges that an unnecessary number of months passed between the time that they could have been joined and their actual joinder.

■■■ To determine the merits of a Third-Party Plaintiff's excuse for a delay in joinder, the Court should give greater weight to the nature of the cause of action and the circumstances of the particular case than to the mere quantity of elapsed time. This approach is evident in *Zielinski v. Zappala,* 470 F.Supp. 351 (E.D.Pa.1979), where the court found timely a joinder effectuated sixteen months after the defendant filed an answer because "the seriousness [of] alleging medical malpractice" justified the defendant's decision to wait "until he received the benefit of two medical opinions." *Id.* at 353. The enormous factual and technical complexity of CERCLA actions requires the court to make a similar adjustment to what might be considered traditional conceptions of prompt joinder. Here, the Third-Party Defendants conveniently measure ICI's delays from the first moment that each of them made available deponents or documents. They fail to credit the time spent by ICI in reviewing, analyzing and verifying the discovery responses made by Third-Party Defendants, as well as the time required for consultation with scientific and medical experts. Also, the question whether Third-Party Defendants responded adequately or promptly to the non-party discovery remains open.[5] When viewed against the backdrop of the federal courts' increasing intolerance of inconsidered lawsuits, *see, e.g.,* Fed.R.Civ.P. 11 (sanctions provision), these factors suggest that ICI pursued its reconstruction of the events at Tybout's Landfill with reasonable dispatch.

---

**5.** Delays cannot be attributed to the Third-Party Plaintiff if they result from discovery problems caused by others. *See Jagielski v. Package Mach. Co.,* 93 F.R.D. 431, 433 (E.D.Pa.1981).

The Court need not decide if Third-Party Defendants obstructed discovery because ICI can excuse its delay for other reasons.

██ The period of delay attributable to Stauffer and the County will run from the filing of the original complaint unless the amended complaints "create[d] new theories of liability", *see Oberholtzer v. Scranton,* 59 F.R.D. 572, 574 (E.D.Pa.1973), or "change[d] the need for impleader." *See Ahern v. Gaussoin,* 104 F.R.D. at 39. The Government's original complaint prayed only for injunctive relief pursuant to section 7003 of RCRA. This prayer differed from conventional pleadings in equity, however, by implicitly requesting compelled clean-up expenditures by Defendants as part of the hazard abatement efforts at Tybout's Landfill. Nevertheless, the complaint did not create the need for impleader subsequently generated by the added CERCLA claims because the latter statute permits liability against a greater number of parties for a broader spectrum of wrongs. Indeed, the very passage of CERCLA resulted from the perceived inadequacy of RCRA as a weapon against the numerous and diverse toxic hazards threatening the nation. *See generally,* H.Rep. No. 1016, 96th Cong., 2d Sess. pt. I, at 17–18, 22, *reprinted in* 1980 U.S.Code Cong. & Ad.News 6119, 6120, 6125; *Retroactive Application of Superfund: Can Old Dogs Be Taught New Tricks?,* 12 Envtl.Aff. 4–10 (1985). Most notably, it was thought that RCRA neither imposed liability on non-negligent off-site generators nor applied to inactive landfills. *See United States v. Waste Industries,* 556 F.Supp. 1301, 1317 (E.D.N.C.1982), *rev'd,* 734 F.2d 159 (4th Cir.1984); *United States v. Northeastern Pharm. & Chem. Co.,* 579 F.Supp. 823, 834 (W.D.Mo.1984).[6] Consequently, a 1980 action brought pursuant to RCRA for dumping at a landfill closed ten years earlier would not have alerted the original Defendants to the desirability of undertaking an extensive third-party investigation. The Court finds, therefore, that the delay in joinder occasioned by the original Defendants cannot be measured from the filing of the Government's original complaint because the subsequent addition of CERCLA claims changed the need for impleader.

The Government's addition of claims under section 106 of CERCLA in March, 1982, also failed to immediately alter the need for impleader because the Government again prayed for injunctive relief that implicitly required Defendants to finance cleanup activities at the Landfill. The precedents then extant in this circuit would have suggested to the County and Stauffer that such compelled expenditures could not be awarded in an equitable action. *See Jaffee v. United States,* 592 F.2d 712, 715 (3d Cir.), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979) ("[a] plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money"); *see also United States v. Wade,* 546 F.Supp. 785, 792 (E.D.Pa.1982) (relies on *Jaffee* to refuse injunctive relief under section 7003 of RCRA where the claim "is transparently a prayer for money damages.") This perception should have been altered in September, 1982, however, when the Third Circuit found that a court proceeding in equity under RCRA could order the defendant to finance a diagnostic study because "[t]he fact that an injunction may require the payment or expenditure of money does not necessarily foreclose the possibility of equitable relief." *United States v. Price,* 688 F.2d 204, 212 (3d Cir. 1982). More specifically, the Third Circuit stated:

[T]hat Congress, by enacting section 7003, intended to confer upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate any risks posed by toxic wastes. Under section 7003, a court could not order the cleanup of a waste disposal site which posed no threat to

---

**6.** The applicability of RCRA to non-negligent off-site generators was not made clear until the legislative history accompanying the 1984 amendments to the statute. H.R.Rep. No. 98–1133, 98th Cong., 2d Sess 119 (1984), *reprinted in* 1984 U.S.Code Cong. & Ad.News 5576, 5690. This history also expressly disavowed the contrary district court opinions in *Waste Industries, Northeastern Pharm.* and *United States v. Wade,* 546 F.Supp. 785, 792 (E.D.Pa.1982). *Id.*

health or the environment. There is no doubt, however, that it authorizes the cleanup of a site, even a dormant one, if that action is necessary to abate a present threat to the public health or the environment. *Id.* at 214. Thus, the County and Stauffer should have known in September, 1982, that the Government's complaint could compel them to expend substantial sums of money.

■ Logically, this analysis should next decide whether the section 107 claims created a need for impleader not present under the section 106 claims. However, the facts and circumstances of this case make such an inquiry unnecessary. Even if we assume that the County and Stauffer delayed joinder of the third-party Defendants for two and one-half years, the evidence adduced by the movants does not support dismissal. Clearly, the County and Stauffer did not pursue their third-party investigation with ICI's vigor. But this observation does not lead ineluctably to the conclusion that their delay is inexcusable. In the period between late 1982 and the commencement of ICI's investigation in 1984, the County and Stauffer pursued this case with reasonable assiduity. Discovery occurred between the Government and the Defendants. Stauffer also took some third-party discovery. In addition, negotiations and disputes over a partial consent order limiting the liability of the Landfill owner consumed substantial time. (D.I. 175–84). Also, this case remained in a comparatively early process stage despite the passage of several years since it was filed. This fact is evidenced by an Order Judge Latchum [7] entered in January, 1984, which gave the Government until April 1, 1984, to join additional Defendants and the Defendants until February 1, 1985, to file any motions. (D.I.187). In sum, the circumstances of this case suggest that the County and Stauffer proceeded with enough vig-

7. Judge Latchum presided over this case until May, 1985.

8. To rule otherwise would create a situation in which the Third-Party Defendants would have

or to withstand Third-Party Defendants' motion to dismiss for late joinder.[8]

### 4. *The Goal of Rule 14*

■ Through third-party practice, Rule 14 seeks to "avoid circuity of action and [to] settle related matters in one suit." *Delco Wire*, 80 F.R.D. at 430, *quoting Benetz v. Photon*, 24 F.R.Serv.2d 57 (E.D.Pa. 1976). The recent history of this case suggests that the presence of the Third-Party Defendants will bring the purposes of Rule 14 to fruition. Following assignment of this case to me in May, 1985, I asked counsel to form various committees and to appoint representative counsel to facilitate the litigation. Counsel's commendable efforts in forming and working within the confines of those recommendations has enabled the Court to simultaneously dispose of problems affecting numerous parties. Moreover, the parties have conserved their own resources by dividing responsibility for motions and discovery. Continued cooperation within the present structure will expedite resolution of this case more efficiently than if there were separate actions.

It is also important to consider that dismissal of Third-Party Defendants from this suit will not insulate them from further action. Given the Court's finding in a separate opinion that a right to contribution exists under CERCLA, Third-Party Defendants must contest their potential liability at some point. It seems best to do so now, in one action, so that the discovery of the events at Tybout's Landfill can finally be completed and the common legal issues resolved. In addition, the presence of all parties in the same action should facilitate settlement because each party will weigh the same factors at the same time when calculating their potential liability. In sum, the policy goals of Rule 14 also support denial of Third-Party Defendants' motion.

to defend this action against ICI and a separate action against Stauffer and the County. Such a result would clearly frustrate the purposes of Rule 14.

### 5. *Conclusion*

After examining the factors relevant to a motion to dismiss for late joinder, the Court finds that the absence of any litigation handicap to the Third-Party Defendants and the sufficiency of Third-Party Plaintiffs' excuses for the delay require denial of the motion.